1810.

*Sunbury,*
*Friday,*
June 15.

Lessee of BOND and others *against* STROUP and others.

A shifted application is not a commencement of title, until return of the survey made under it, except as against a person who has actual notice of the survey; and although the proprietor of a younger survey may have actual notice of the survey upon the shifted application, yet if there is laches in the return of this survey, and in the mean time the younger survey is sold to a *bona fide* purchaser without actual notice, he will hold the land.

| Binney. |
| 3b '66 |
| 138  250 |

THIS was an appeal from the decision of *Brackenridge* J. who refused to set aside a verdict which the jury found for the defendants, at a Circuit Court for *Mifflin* in *June* 1808.

The case was argued in this court by *Duncan* for the plaintiffs, and by *Huston* and *Watts* for the defendants.

TILGHMAN C. J. The plaintiff claims under an application of the 25th *June* 1767 in the name of *William Perry Brady*, on which a survey was made on the 12th *September* 1768, and returned to the office of the surveyor general on the 28th *September* 1772. On the 13th *January* 1775, *Brady* conveyed to *George Campbell, Daniel Clymer, Phineas Bond,* and *Andrew Robeson.* A patent was issued on the 2d *May* 1789, and by sundry conveyances unnecessary to mention, the title to this tract became vested in the plaintiff. It is admitted by the plaintiff, that *John Brady* was the real owner of the application, although entered in the name of his son *W. P. Brady* an infant.

The defendants claim under two applications dated the 1st *August* 1766, one in the name of *John Wilson*, junior, the other in the name of *William Raye.* The leading application (*William Raye's*) is thus described. " To include a spring " leading into *Juniata*, and adjoining lands of *John Wilson* " jun. including an improvement made in 1757." *John Wilson* jun. is, " to the northward of the east branch of *Little* " *Juniata*, adjoining land claimed by *William Raye*." These applications are part of twenty five, which were entered at the same time by *Samuel Wallis*, deceased, and they are now claimed as part of *Wallis's* estate. It is admitted that the land in dispute lies on the waters of *Bald Eagle* creek, which runs into the western branch of *Susquehanna*. The defendants contend that surveys were made on these applications

in *June* 1767. There is no positive proof, at what time the survey on *John Wilson* jun's. was returned, but a patent issued to *S. Wallis* on the 24th *May* 1782. The survey on *William Raye* was returned on the 29th *July* 1783, and a patent issued to *Samuel Wallis* on the 31st *October* 1783. The plaintiff's survey includes part of both the tracts, to which the defendants make title in the manner above mentioned.

A great deal of evidence was given in this cause, and several points both of law and fact were much contested. It has been argued with great ingenuity and force on both sides. My opinion will be given on one point only, and therefore I think it unnecessary to say any thing of the others. The defendants' surveys were made on shifted applications, because *William Raye*, on which *John Wilson* jun. depends, calls for a spring leading into *Juniata*, and including an improvement. This is not a vague description; the *spring* and the *improvement* are in their nature fixed to a certain place. The waters of *Juniata* are called for, but the survey is made on the waters of the west branch of *Susquehanna*. It is therefore in a different place from that described in the application. It has been long settled, that these shifted applications have no commencement of title, till the survey is returned; because before the return the proprietary officers have no notice of such survey, and are therefore at liberty to grant the land to any other person. But it has been also settled, that a person who has actual notice of the survey, before the return, shall be bound by such notice. Now to apply this principle to the case before the court. The plaintiff has the youngest application, and in that respect, her title is inferior to the defendants'. But the plaintiff's survey having been first returned, a preference was thereby gained. To obviate this difficulty, the defendants allege that *John Brady* had actual notice of the defendants' survey, at the time the application was entered. This was matter of fact for the decision of the jury; and if the cause turned upon that, and the jury thought that *Brady* had notice, there would be an end of the matter. But the plaintiff's case is different from *Brady's*. Let us consider how the matter will stand, supposing *Brady* had notice, and was bound by it. *Wallis* neglected to have his surveys returned till after *January* 1775, when those

persons, under whom the plaintiff claims, purchased of *Brady*. Here was a most unreasonable delay, a lying by for upwards of seven years. In *Duncan's Lessee* v. *Wallis*, where plaintiff and defendant had applications both dated the 3d *April* 1769, it was held that the defendant, though his application was prior and descriptive of the land in controversy, should be postponed to the plaintiff, because the defendant had no survey made prior to *March* 1773, at which time the plaintiff obtained her patent. That case was much stronger than the present, because there, the defendant's application called for the land in dispute. The same principle has been adopted in many other cases, and it is so reasonable, that its justice cannot be doubted. It is of the utmost consequence to preserve uniformity of decision, otherwise there will be no certainty in property.

The defendants' counsel have endeavoured to evade the force of this principle, by saying that *Campbell* &c. who purchased of *Brady* in 1775, were in fact the persons for whose use *Brady* entered the application originally, and that as he was only their agent, they must be affected by the notice which he received. The law on this point would be clearly with the defendants, if the fact supported them. But I can see nothing in the evidence, which warrants this assertion, nor was the fact so conceived by the judge before whom the cause was tried. The defendants say too, that the survey on the application in the name of *John Wilson* jun. was returned prior to the return of the plaintiff's survey. I am by no means satisfied of that from the evidence, as reported to us. Indeed as the defendants' title commences on the return of survey, I think it was incumbent on them to prove the time of return more clearly than they have done. But even if it was so, the return of *William Raye* was not made, as is confessed, before 1783. So that upon the principles I have laid down, the verdict should have been for the plaintiff for at least what was contained in *Raye's* tract. The judge's charge inclined, in point of law, in favour of the plaintiff, because she, or those under whom she claimed, were purchasers for valuable considerations without notice, after an unreasonable delay of *Samuel Wallis*, in procuring a return of his surveys.

That is precisely the light in which it strikes me. I am therefore of opinion that a new trial should be granted.

YEATES J. concurred.

New trial awarded.