J. H. GREEN ET AL. v. A. MILLER AND W. J. BULLOCK.

(Filed 20 November, 1912.)

1. Cities and Towns—Streets and Sidewalks—Plats and Maps—Innocent Purchasers—Notice.

When the owner of lands in a city or town has them platted into lots, streets, alleys, etc., and sells the lots with reference to the streets, alleys, etc., according to a map made for the purpose, he thereby dedicates the streets and alleys to the use of

the purchasers of the lots, who acquire their title with notice thereof, express or implied; and, under certain circumstances, it is a dedication to the public.

2. **Same—Mandatory Injunction.**

Under conflicting evidence as to whether the purchaser of a lot of land in a tract which had been platted and mapped by the original owner had notice of a street appearing on the map, which he had obstructed, the jury having found in the negative, it is reversible error for the trial judge to grant a mandatory injunction compelling the defendant to desist from obstructing the street, and his judgment will be reversed on appeal.

3. **Cities and Towns—Streets and Sidewalks—Plats and Maps—Dedication—Innocent Purchasers—Equity—Estoppel—Notice.**

The equitable doctrine which will estop the owner of lands from denying his dedication of streets platted therein, is predicated upon the idea of bad faith in him, or those claiming under him, with knowledge of the facts, or notice thereof, expressed or implied, and has no binding effect upon innocent purchasers for value of the lots upon these streets without notice, actual or constructive, of the easement, or of the rights of others therein.

4. **Cities and Towns—Streets and Sidewalks—Plats and Maps—Dedication—Innocent Purcahsers—Notice—Issues—Procedure—Appeal and Error.**

In an action for a mandatory injunction for the removal of an alleged obstruction in a street which had been platted off in lands, with others, by the original owner, the verdict of the jury established the facts that the land had been thus divided into streets and lots sold to various purchasers, and by answer to the seventh issue, under conflicting evidence, not objected to, that the defendant was a purchaser of the *locus in quo* without notice: *Held,* the verdict was controlling, and the judge of the lower court was in error in granting the injunction, thus disregarding the legal effect of the seventh issue; and even should he have thought that the defendant purchased with constructive or legal notice, the practice is that he should have set the verdict aside, and given the defendant the power of reviewing his action on appeal.

5. **Cities and Towns—Streets and Sidewalks—Condemnation—Obstructions—Mandatory Injunction—Ejectment.**

The remedy of an incorporated city and town requiring the lands of private owners for the purposes of laying off streets, is by condemnation proceedings; and whether a mandatory injunction may be granted to have an obstruction in its streets removed, in proper instances, or whether an action of ejectment would lie, *Quære.*

GREEN *v.* MILLER.

APPEAL by defendants from *Webb, J.,* at May Term, 1912, of BEAUFORT.

This action was brought by J. H. Green, town of Belhaven, Mary A. Woodard, A. W. Carty, and others, against the defendants A. Miller and W. J. Bullock, and the relief sought is a mandatory injunction compelling the defendants to desist from obstructing any part of Pungo Street which lies within the corporate limits of Belhaven, and to remove therefrom certain buildings or stables now occupied by the defendant A. Miller. The jury returned the following verdict:

1. Was the defendant Bullock, in 1890, the owner in fee of that tract of land in what is now known as Belhaven, bounded on the north by Pantego Street, on the east by Pamlico Street, on the south by Clark or Front Street, and on the west by Allen or Union Street? Answer: Yes.

2. Did the defendant Bullock cause this land or any part of it to be surveyed and platted into lots and streets? Answer: Yes.

3. If so, did the defendant Bullock sell lots in this tract with reference to said plat or survey? Answer: Yes.

4. If this tract or any part of it was surveyed and platted into lots and streets, did one of the streets so surveyed and platted correspond with what is now known as Pungo Street? Answer: Yes.

5. If what is known as Pungo Street was surveyed and platted out, what width was given it in the survey and plat? 80 feet. And did it extend from Pamlico to Allen Street? Answer: Yes.

6. Is there any obstruction in that lot of land covered by Pungo Street? Yes. And if so, who maintains it? Answer: A. Miller.

7. Did the defendant Miller have notice, at the time he purchased the land covered by the deed introduced in this action, that any part of it was covered by Pungo Street or any street? Answer: No.

Plaintiffs alleged that W. J. Bullock, being the owner of certain land now embraced within the limits of the town of Belhaven, caused the same to be surveyed and laid off into lots and

streets, and that the surveyor, at Bullock's request, made a map
or plan thereof, and the plaintiffs, other than the town of Bel-
haven, bought several of the lots from him, according to the said
plan or map, some of them being represented on the map as
bounded on Pungo Street. That one of the streets was desig-
nated on the map and in the plan as Pungo Street, and that the
lots were sold to plaintiffs, other than the town of Belhaven,
and described as fronting on Pungo Street, which is the third
street north of Pungo River, the two intervening streets being
Clark and Main. Pungo Street runs east and west, crossing
Pamlico Street, and extends to Allen Street and as far west as
Haslin Street. This is what we gather from the allegations,
the map, and the evidence, and if not precisely accurate, is
sufficiently so for all practical purposes. The counsel did not
agree as to the correctness of the map, and Pungo Street, as
claimed by the plaintiffs, may extend north, instead of west.
There is an allegation in the complaint that the town of Bel-
haven had accepted the dedication of Pungo Street, and that it
had become one of the public streets or thoroughfares of the
town. The plaintiffs further allege that Bullock sold to L. G.
Roper, and he to the defendant Miller, a parcel of land, west
of Pamlico Street, which includes a part of Pungo Street, and
that defendant Miller has erected in Pungo Street, west of Pam-
lico Street, a building which he now occupies and which ob-
structs the street and greatly interferes with the use thereof.
The defendant A. Miller denies all the material allegations of
the complaint, except the one that he had bought a part of the
land from Roper. He specially avers that he purchased from
Roper for full value, and if any plan or map of the land was
made for Bullock, or any street by the name of Pungo had been
dedicated to private or public use, or laid out for either of such
uses, he had no notice thereof; nor did he have any notice that
the land he bought embraced any part of what is well known
and defined on the east side of Pamlico Street as Pungo Street,
nor that there was any such street or any street at all extending
across the place where he bought and erected the buildings. It
was stated at the hearing in this Court, as we understood, and
it so appears in the record, that none of the deeds referred to

or called for the map, but that the lots described in several of them fronted on Pungo Street. It appears that the map was never seen by any purchaser of a lot from Bullock, except one J. P. Clark, who found it among his father's papers. Judgment was entered upon the verdict, and the defendants appealed.

*John G. Tooley and Rodman & Rodman for plaintiffs.*
*Small, McLean & McMullan for defendants.*

WALKER, J., after stating the facts: It is evident that this case must be decided upon the single question as to whether defendant was a *bona fide* purchaser for value and without notice of the facts alleged by the plaintiffs to constitute an equitable estoppel, which means that if he is bound thereby, he is concluded from now asserting that he is lawfully within the limits of Pungo Street, west of Pamlico Street, and cannot continue to maintain his stable or other structure. There was much controversy as to whether Pungo Street, west of Pamlico Street, if represented as such on the Bullock map, had ever actually been laid out, by such physical marks and boundaries as to constitute notice to the world that the land corresponding to that so designated on the map had been appropriated for a street and dedicated to the use of Bullock's grantees or to the public. Bullock himself testified that Pungo Street, west of Pamlico, "had not been surveyed nor opened up," nor did the surveyor plat all of the land. He further stated that "the surveyor might have surveyed east Pungo Street, that is, east of Pamlico Street, but he did not survey west of that street, and they did not open any street from Pamlico Street westwardly to Haslin Street." He still further testified that he employed Mr. Tripp to make the survey, who made a plat for him, but did not plat it all. "It was more than the survey. I have never had the plat. The Clarks made the street themselves. Pamlico Street is the only street which has been left like I first cut them out. They have all been changed more or less. Parties built without knowing where the streets were. For instance, this man Pettiford, the husband of Josephine Pettiford." W. W. Walker testified that he bought the land where the stable is, from Dr. Bullock; but it seems that the deed was made by Dr. Bullock to L. G. Roper,

who in turn sold and conveyed to the defendant A. Miller. The witness Walker, who built the stable, stated that there was no street west of Pamlico, and nothing but a swamp. That the town of Belhaven had notified him, by its proper officers, and while he was setting the pillars, to desist from completing the stable until a committee could be appointed to condemn the street for the town. Afterwards, the committee reported, and the commissioners of the town accepted the report as to Pungo Street east of Pamlico, and rejected it as to the land lying west of that street, and authorized him to proceed with his work and finish the building, which he did. He listed the property for taxation and paid the taxes assessed against it. When he was building the stable there was no street there, but a street called Pungo was opened on the east side of Pamlico. This is only some of the testimony bearing upon the main question in the case. N. L. Sawyer testified: "I live in Washington, and lived in Belhaven thirteen years. I know where Miller's stables are. When I lived there it was nothing but swamp and subject to the ebb and flow of the tide. I know when Mr. Walker built. There was no sign of any street." There was much more testimony to the same effect.

With this evidence behind the verdict to sustain the finding of the jury upon the seventh issue, the court, without disturbing the verdict, in any respect, adjudged thereon that defendants remove the buildings from the street called Pungo, west of Pamlico, enjoined them from maintaining any kind of obstruction therein, and decreed that the street be kept open and free from any impediments, for the use of the inhabitants of the town of Belhaven, without let or hindrance.

In this we are of the opinion there was error, and the judgment should have been the other way. Where the owner of real property lays out a town or village upon it, or even a plat of ground, and divides it into blocks or squares, and subdivides it into lots or sites for residences, which are intersected by streets, avenues, and alleys, and he sells and conveys any of the lots with reference to a plan or map made of the property, or where he sells or conveys according to a map of the city or town in which his land is so laid off, he thereby dedicates the streets

and alleys to the use of those who purchase the lots, and also to
the public, under certain circumstances not necessary to be now
and here stated, and this is so unless it appears either by express
statement in the conveyance or otherwise that the reference to
or mention of the street or streets was solely for the purpose of
description, and not intended as a dedication thereof. 13 Cyc.,
455. The same rule is said to apply to such pieces or parcels
of the land marked on the plat or map as squares, courts, or
parks. The reason for the rule is that the grantor, by making
such a conveyance of his property, induces the purchasers to
believe that the streets and alleys, squares, courts, and parks
will be kept open for their use and benefit, and having acted
upon the faith of his implied representations, based upon his
conduct in platting the land and selling accordingly, he is
equitably estopped, as well in reference to the public as to his
grantees, from denying the existence of the easement thus
created. 13 Cyc., 457 and notes. Many authorities sustain the
principle, and the dedication, when once fully made, is held to
be irrevocable. *Moose v. Carson,* 104 N. C., 431, and numerous
authorities cited in the opinion of the Court by *Justice Avery,*
and also at the end of the case in the annotated edition by the
present *Chief Justice; Davis v. Morris,* 132 N. C., 436; *Hughes
v. Clark,* 134 N. C., 460; *Milliken v. Denny,* 135 N. C., 22
(*s. c.,* 141 N. C., 227); *Hester v. Traction Co.,* 138 N. C., 293;
*S. v. Fisher,* 117 N. C., 740; *Tise v. Whitaker,* 144 N. C., 514;
*Collins v. Land Co.,* 128 N. C., 563; *Bailliere v. Shingle Co.,*
150 N. C., 627; and other authorities cited in the briefs of coun-
sel in this case, to which access may be had by those wishing to
pursue the investigation further.

. But while the rule is well established, it is necessary that in
some way notice of the dedication, thus made, be fixed upon
those who may buy any part of the property which is subject
to or charged with the easement, or of the rights of others flow-
ing from the dedication. It would be unjust that a rule which
is based upon an equitable doctrine should in its application,
deprive a man of property bought in good faith, for value and
without notice of the right to the easement. Parties who claim
the benefit of the easement by virtue of the implied dedication

can easily protect their right and interest in it by having proper reference made to the map in their deeds, and if they fail to do so, it is their own fault, and they should not be permitted to visit its consequences upon an innocent purchaser who was misled by their laches. It is held that the original grantor, who sold by the map or the diagram of the land as laid out into blocks and lots, streets and avenues, and those claiming under him, are estopped to deny the right of prior purchasers of lots to an easement in the streets represented on the map, but it is not a strict estoppel, but one arising out of the conduct of the party who originally owned the land and platted it for the purpose of selling the lots, and is predicated upon the idea of bad faith in him, or those claiming under him, with knowledge of the facts, or with notice thereof, either express or constructive, to repudiate his implied representation that the streets and alleys, parks and places, will be kept open and unobstructed for the use of those who may buy from him. So far as the owner is concerned, it would be fraudulent for him to contest the right of his grantees, but as to those who have bought without notice, actual or constructive, of the facts, and the equitable estoppel fastened upon him, the estoppel grounded, as we have said, in an equitable principle, completely fails. The same general principle of equity that raises the estoppel will protect him, as an innocent purchaser, from its operation; and this is but just and right. But we are not without direct authority upon this point, although the proposition seems to be somewhat new, or rather cases presenting it are rare, but it is, at last, but the application of a conceded rule of equity to the special facts of the case. One buys property of another without notice that some third person has a right to or interest in such property, and pays a full and fair price for the same at the time of such purchase or before he has notice of the claim or interest of such other in the property (5 Cyc., 719), takes the same free from the right of the other, because he is regarded as an innocent purchaser and entitled to the equitable consideration of the court. It is a perfectly just rule, and it would be strange if the law were otherwise.

It is said in 13 Cyc., pp. 492, 493, that, with the exception of *bona fide* purchasers without notice, all parties holding under a dedicator take only his title. "The general rules as to the title taken by *bona fide* purchasers without notice apply where the encumbrance is a dedication to the public use. Usually the state of the property or the records constitute notice by which the purchaser is bound, whether his knowledge of the easement be actual or not."

The question was directly raised in *Schuchman v. Borough of Homestead,* 111 Pa. St., 48, and, after stating that a *bona fide* purchaser without notice is unaffected by notice to his vendor (*Bond v. Stroup,* 3 Binn., 66), and, therefore, if the defendants in that case purchased the land without notice, even if Phillips, their immediate vendor, had been notified of the dedication before his purchase, their title would be good, it was there said by the Court: "It is reasonably certain that the Homestead Bank and Life Insurance Company dedicated the land to the public, and that a number of persons purchased lots' expecting to enjoy the resulting advantage. However, nothing in the plan, or in the course of title, or on the ground, was a warning to Ormsby Phillips of such dedication, and therefore he acquired a good title. The citizens of the borough suffer serious loss under the operation of a rule which applies to them as it would to an individual under similar circumstances." So in *Harbor v. Smith,* 85 Md., 538, the Court asserted the same principle as applying to cases of dedication, saying: "It may be conceded that if there were any owners of lots who purchased under such circumstances and without notice of the contract or the agreement between the Patapsco and Brooklyn companies, they would have a standing in a court of equity." We think the same doctrine was impliedly recognized by this Court in *Collins v. Land Co.,* 128 N. C., at marg. p. 563 (Anno. Ed.).

In this case there is no reference in the deeds, as set out in the record, to the map of Bullock, and no deed in defendant's chain of title referring to the map. The testimony given by defendant's witnesses, a part of which we have recited, tends to show that there was nothing "on the ground" to warn Miller or Roper, his vendor, of any dedication. It is true, there was testimony to the contrary, but the court submitted the seventh

issue to the jury, and, upon a presumably fair consideration of the evidence, they answered it in favor of defendants. The court let that issue stand and gave judgment on the entire verdict. Plaintiff did not ask that it be set aside as to the seventh issue, which application, if made, would have been addressed to the discretion of the court. There is no exception upon which the verdict as to that issue can now be assailed, and there could not well be, as plaintiff did not appeal, but defendants did. The court simply disregarded the legal effect of the seventh issue, and we presume for the reason that he did not think it prevented a recovery by the plaintiff, or, in other words, that the doctrine of *bona fide* purchaser without notice did not apply to the case. Even if the judge thought there was constructive or legal notice to defendant of the dedication—which there was not, as we have shown—he should have set aside the verdict upon that ground, so that defendant could review his ruling. As the issue and answer thereto were permitted to remain a part of the verdict, we cannot go behind it to inquire whether there was actual or constructive notice, as we give judgment not upon evidence, but upon the findings of fact, or the verdict of the jury. If the court was of opinion that there was no evidence to support the finding upon the seventh issue, or that it was against the weight of the evidence, the remedy was to set it, or the entire verdict, aside. In the absence of such a course of procedure, we cannot ignore the finding, nor could the judge, but must accept it as true and correct. There was strong and (if believed by the jury, which seems to have been the case) convincing proof to sustain their finding upon that issue.

The plan or map made by Tripp, the surveyor, for Dr. Bullock, was never attached to any of the deeds. It may be a fact that lots were sold to plaintiffs, except the town, and to others, with reference to the plan, but the evidence shows that it was never made public, but was found by J. P. Clark, plaintiffs' witness, among the papers of his father when the latter died. Looking at the whole case, we find that there was evidence for the jury under instructions from the court, by which they were warranted in finding that there was "nothing in the plan, or in the course of (defendant's) title, or on the ground" to notify

161—3

Miller or Roper of any dedication of land west of Pamlico Street for another street, to be called Pungo, and, therefore, if in fact there was such a dedication, he purchased *bona fide* and without notice of it. *Schuchman v. Borough of Homestead, supra.* The deeds are not set out in the record, but only extracts therefrom showing the description. Some of them call for Pungo Street as the boundary of the lots conveyed thereby, but there is nothing in them to indicate where it is on the map, as the latter is not referred to. If they had referred to the map and it delineated the street, or if the jury had found that there were physical marks on the ground, of such a nature that defendant must have known of the dedication, a different question would be presented, as a purchaser is bound to take notice of an apparent easement, servitude, or dedication for a street or other way, and if he fails to do so, he buys at his peril and takes his title subject thereto. But all this, as we have said, was for the jury to consider before the verdict was returned, and under proper instructions from the court. The verdict only finds that Bullock owned the land covering the *locus in quo;* that he caused it to be surveyed and platted into lots and streets and sold lots with reference to the plat, and that on the map what is known as Pungo Street is designated as extending from Pamlico to Allen streets, and that defendant A. Miller has obstructed it, but that he purchased his lot without any notice of the dedication of the street. But there is no evidence that he ever saw the map or heard of it, and the mere fact that Bullock conveyed according to a hidden or concealed map and without reference thereto in his deeds, as far as appears, is certainly not legal notice to Miller of the dedication and location of the street. So that the important fact is omitted from the verdict, that Bullock, in contemplation of law, conveyed by the map, that is, by referring to it, and there is absolutely no evidence that Miller or Roper actually knew of the map or had ever heard of it. If there was, the jury were not influenced by it in making up their verdict, and it is for them to say what the facts are. In truth, they seemed to have repudiated the plaintiff's testimony as to there being any street known as Pungo, west of Pamlico, and to have accepted what defendants' witnesses testi-

fied in regard to that matter, viz., that the land was swampy and subject to the ebb and flow of the tide.

Upon the verdict and the whole case, the court, in our opinion, should have given judgment for the defendants, and erred in entering judgment for the plaintiffs upon the verdict. This reverses the judgment, and the court below will enter judgment for the defendants accordingly.

We have not considered the other serious questions as to the right of plaintiffs to an injunction, as we have not found it essential to do so. It may be that a municipal corporation, like the town of Belhaven, is entitled to have an obstruction in its streets removed, and for that purpose to have a mandatory injunction in a proper case. It has been held that it can bring ejectment, where a street, or a part thereof, is illegally withheld, and some courts hold that an injunction will lie as the more speedy and convenient remedy. We will decide those questions when properly and necessarily presented to us. If the town of Belhaven requires the land of the defendant Miller for public use as a street, it may be acquired by condemnation.

Reversed.