HUGHES v. CLARK.

(Filed March 22, 1904).

1. DEDICATION—*Streets—Specific Performance.*

Where lots are sold by reference to a map on plat representing a division of a tract of land into streets and lots, such streets are dedicated thereby, and the purchaser of lots acquires the right to have the streets kept open.

2. DEDICATION—*Streets.*

The acceptance or non-acceptance by a town of streets dedicated by a platted tract does not affect the title thereto.

ACTION by J. E. Hughes and others against W. T. Clark, heard by *Judge Frederick Moore* and a jury, at November Term, 1903, of the Superior Court of PITT County. From a judgment of nonsuit the plaintiffs appealed.

*Jarvis & Blow* and *F. S. Spruill,* for the plaintiffs.
*Connor & Connor* and *Fleming & Moore,* for the defendant.

MONTGOMERY, J.   The purpose of this action is to compel specific performance on the part of the defendant of a contract entered into in February, 1902, for the sale by the plaintiffs and the purchase by the defendant of a parcel or lot of land and its improvements situated in the town of Greenville.   In conformity with the written agreement between the parties, the plaintiff executed in due form a deed to the property and tendered it to the defendant, who declined to accept it and pay the agreed purchase price on the ground that the plaintiff had no good and sufficient title to that part of the lot of land described in the deed upon which was located a leaf tobacco factory and machinery necessary

for its operation. The only question in the case then is this, "Did the plaintiffs have at the time they tendered the deed to the defendant a good and sufficient title to that part of the lot on which was situated the factory and machinery and equipment?"

In 1892 the Greenville Land and Improvement Company being the owner of a tract of land known as the "Moore land," lying to the southeast of Greenville and adjoining the town, had the same laid out by P. Matthews, a surveyor, into building lots and streets—Matthews at the same time furnishing a map on which the streets were designated by names and the lots by numbers. Numerous deeds, in each of which one or more of the lots was embraced, to various purchasers, were executed by the Greenville Land and Improvement Co., its successor, The Greenville Lumber Co., and Lovitt Hines, receiver of the last-named company, and duly registered prior to the sales made by said Hines, receiver, of lots numbers twenty-one, thirty-four and thirty-five, and in all those deeds reference was made, as to the description of the property conveyed, to the names of streets and numbers of lots as shown on the *map* of Matthews. The *habendum* was in these words: "To have and to hold the above-described parcel or lot of land, together with the rights of ingress and egress on all the streets leading to the same, and all other rights and privileges thereto belonging." The lots numbers twenty-one and thirty-five with several others were conveyed by Hines, receiver, to L. C. Harper, and lot thirty-four was conveyed by Hines, receiver, to Strause, who in turn conveyed it to Arthur. In the deed from Hines to Arthur is also conveyed all the right, title and interest which the Greenville Lumber Co. might have in and to any or all of the streets included in the lands or dividing the lots therein conveyed. Arthur and wife in 1901 conveyed lots twenty-one, thirty-four and thirty-five to the plaintiffs,

together with a strip of land ten feet wide and running along the southern side of the above-mentioned lots, the said ten feet being at the time a part of Eleventh street on the map of Matthews. The property mentioned and described in the deed which the plaintiffs tendered to the defendant embraced lots twenty-one, thirty-four and thirty-five and also the ten feet strip of Eleventh street, upon a part of which the plaintiffs afterwards built one end of their tobacco factory. Eleventh street, at the time of the Matthews survey, was set apart and staked off with iron stakes, but that part of the street which was between Clark and Pitt streets upon which lots thirty-four and thirty-five abutted, was not actually put in a condition for general use at the time of the sale of lots thirty-four and thirty-five, although people could and did pass over the same.

Did Arthur's deed to the plaintiffs have the effect of vesting the title to the ten feet strip of Eleventh street in the plaintiffs? Or to state the question in another form, could Hines, the receiver of the Greenville Lumber Company, by his deed to Arthur, enable Arthur or his grantees, the plaintiffs, to obstruct Eleventh street by building on a part of it a tobacco factory, as against purchasers of lots according to the plan of the Matthews survey? The decisions of this Court are to the contrary. In *Rives v. Dudley,* 56 N. C., 126, 67 Am. Dec., 230, *Judge Pearson,* in illustrating the question decided in that case, said for the Court: "What is the principle? It is this: If the owner does an act whereby he signifies his intention to appropriate land to the use of the public as a highway or street or square, to be used by the public as a pleasure-ground or the like, and *individuals in consequence of this act purchase property or build houses with reference to its being so used by the public, and become interested to have it so continue,* he is precluded from resuming his private rights of property over the land, because it

would be fraudulent in him to do so. When individuals have become interested in reference to the use of the land by the public, the dedication takes effect *immediately."* And again, in *Moose v. Carson,* 104 N. C., 431, 17 Am. St. Rep., 681, 7 L. R. A., 548, the Court declared it to be a well-settled principle that where a corporation or an individual, by laying off streets, has induced third persons to buy lots adjacent to them, the dedication to the public use of the streets was irrevocable, and that even in cases where they have not been formally accepted by the authorities of a town in which they lie. In *Conrad v. Land Co.,* 126 N. C., 776, the Court said: "If the owner of land lays it off into squares, lots and streets with a view to forming a town or city or as a suburb to a town or city, certainly if he causes the same (the map) to be registered in the county where the land is situate and sells any part of the lots and squares, and in the deed refers in the description thereof to a plat, such reference will constitute an irrevocable dedication to the public of the streets marked on the plat. *Meier v. Portland,* 16 Ore., 500, 1 L. R. A., 856. We think the same principle would apply to the piece of land which was marked on a plat as squares, or courts, or parks, and that streets and public grounds designed on said map should forever be opened to the purchaser and the public." It is true that in *Moore v. Carson, supra,* the defense of the defendants was that their ancestor had bought lots abutting the *particular* street in Taylorsville in Alexander County, and which street the commissioners had afterwards attempted to sell and convey to the plaintiffs; and in *Conrad v. Land Co.,* the action for a perpetual injunction to restrain the defendant from selling for private purposes a part of "Grace Court" was brought by persons who had bought lots abutting Fourth street as it ran alongside the court. Nevertheless, in the last-mentioned case the Court held, as we have seen, that all the

streets marked on the plat were irrevocably dedicated to the public. And in *Collins v. Land Co.*, 128 N. C., 563, 83 Am. St. Rep., 720, although the streets which the defendants were obstructing and closing were in a remote and sparsely settled and comparatively less valuable section of the lands which had been laid off into streets and lots, the Court held that the scheme of sale as indicated by the map was a unity, and that there was a presumption that all the public ways had added value to all the lots embraced in the scheme. In that case the Court, after having referred to the lack of uniformity in the decisions of the Courts of the several States upon the matter under consideration, some of them holding that the purchaser had a right of way over all the streets designated on the map and that each and all of them must be kept open, while in other jurisdictions it was held that a purchaser could only require the public way adjoining the purchaser's lot to the highway in one direction and to the next side street in the other, declared that after a careful consideration it would not alter the decision on that question made in *Conrad v. Land Co.* It will not be superfluous to quote from the last-mentioned case what was said there on this point: "The principle of law involved in this case is, we think, the same as that in *Conrad v. Land Co.*, 126 N. C., 776. The inconvenience and loss which may arise here from the enforcement of that principle of law will be greater than in that case, but that argument would not be allowed to influence us in our decision. The Courts of the States in which the question before us has been presented and decided are divided. In some jurisdictions it has been held that where lots have been sold by reference to a plat representing a large tract of land into subdivisions of streets and lots, like the one before us, the purchaser of a lot does not acquire a right of way over every street laid down on the plat. *Pearson v. Allen,* 151 Mass., 79, 21 Am.

St. Rep., 426.   In other courts it is held that a map or plat
referred to in a deed becomes a part of the deed as if writ-
ten therein, and that therefore the plan indicated on the
plat is to be regarded as a unity, and the purchaser of a lot
acquires a right to have all and each of the ways and streets
on the plat or map kept open.   This view is so well and
clearly stated in Elliott on Roads, section 120, that we
quote it: 'It is not only those who buy land or lots abutting
on a street or road laid out on a map or plat that have a
right to insist upon the opening of a street or road, but
where streets and roads are marked on a plat, and lots are
bought and sold with reference to the general plan or scheme
disclosed by the plat or map, acquire a right to all the public
ways designated thereon, and may enforce the dedication.
The plan or scheme indicated on the plat or map is regarded
as a unity, and it is presumed, as well it may be, that all
the public ways add value to all the lots embraced in the
general plan or scheme.   Certainly, as every one knows, lots
with convenient cross streets are of more value than those
without, and it is fair to presume that the original owner
would not have donated land to public ways unless it gave
value to the lots.   So, too, it is just to presume that the pur-
chasers paid the added value, and the donor ought not there-
fore to be permitted to take it from them by revoking a
part of his dedications.' "

The effect of the foregoing decisions therefore is that
where lots are sold and conveyed by reference to a map or
plat which represent a division of a tract of land into sub-
divisions of streets and lots, such streets become dedicated
to the public use and the purchaser of a lot or lots acquires
the right to have all and each of the streets kept open; and
it makes no difference whether the streets be in fact opened
or accepted by the governing boards of towns or cities if they
lie within municipal corporations.   There is a dedication,

and if they are not actually opened at the time of the sale, they must be at all times free to be opened as occasion may require. If such streets be obstructed, there is created thereby a public nuisance, and each purchaser can by injunction or other proper. proceeding have the nuisance abated, as there is in all such cases an irrebutable presumption of law that any complaining purchaser of a lot or lots has suffered peculiar loss and injury.

The plaintiffs, however, insist that they acquired a good title to the property through the action of the Board of Aldermen of the town of Greenville. At the time of the Matthews survey and the sale of the lots by the Greenville Land and Improvement Company and Hines, the receiver of the company, the property was outside the corporate limits of the town; but in 1899 the limits of the town were extended so as to take the entire tract of land, including Eleventh street, within them.

On March 14, 1902, the Board of Aldermen of the town, after declaring in meeting that they had not accepted that part of Eleventh street between Clark and Pitt streets, as it appeared on the map of Matthews, as a street of the town, in consideration of an attempted donation of Arthur to the town of the land on which Eleventh street runs, presumably under his deed from Hines, receiver, and which did not pass the easement, and the further agreement of Arthur to donate the land between Pitt and Greene streets to the town and to open Eleventh street between those points, and the proposition of the plaintiffs to open Eleventh street forty feet wide between Clark and Pitt streets, if the board would agree to accept Eleventh street forty feet wide in place of fifty feet (Eleventh street being fifty feet wide in fact and also on the Matthews survey)—agreed that the plaintiffs might continue to use and occupy the factory building on that part of Eleventh street lying alongside the southern end

of lot thirty-five, and they also relinquished to the plaintiffs and their assigns all right or claim the town might have acquired, if any, to said ten feet of Eleventh street between Clark and Pitt streets where the factory of the plaintiffs is located. We cannot see how that action of the Board of Aldermen helped the title of the plaintiffs. There are most respectable authorities which hold that if a city or town accepts, in an amended charter, additional territory previously laid off and platted into streets and lots, the acceptance amounts to an acceptance of such an addition and the streets and alleys therein. If we should adopt that view it might be in the power of the Board of Aldermen, under section 3803 of The Code, to narrow the street, but the only effect of that would be to restrict the town's liability to keep in repair the street so narrowed. They would have no right to relinquish or give away the remainder of the former street to a private individual for private purposes. *Pence v. Bryat* (W. Va.), Vol. 46, No. 3 S. E. Rep.; *Moore v. Carson, supra.*

On the other hand, the acceptance of the additional territory under the amended charter did not have the effect in law of an acceptance by the Board of Aldermen of Eleventh street fifty feet in width, as it appears on the map of Matthews, and that the only acceptance by the town of Eleventh street was that of March, 1902, as being forty feet in width, leaving ten feet thereof at the southern side of lots thirty-four and thirty-five, then the town authorities had nothing to do with the ten feet of the street which they declined to accept. It remained exactly as it did before it became a part of the town, dedicated to the public use though not to be kept in repair by the town, and not to be obstructed, because of the reasons already given in this opinion.

We find no error in the judgment of his Honor in dis-

HUGHES *v.* CLARK.

missing the plaintiff's action as of nonsuit, and the judgment is

Affirmed.

DOUGLAS, J., concurring in result only.   I am compelled to concur in the judgment of the Court, since, however erroneous the opinion of the Court may be, it would be manifestly inequitable to compel the defendant to specific performance of a contract for the purchase of land, the use of which this Court will not permit him to enjoy.   I do not think that the case of *Collins v. Land Co.* 128 N. C., 563, has any application to the case at bar, but in any event my views have been so fully expressed in my dissenting opinion in that case that it is needless to repeat them here.

As to the other question in the case, the solution seems very simple.   The plaintiff owns the ten feet in controversy in fee-simple, subject only to whatever rights of easement the public or adjacent proprietors may have therein.   When the easement ceases to exist by abandonment or otherwise, the owner retains the fee and recovers the unrestricted use of his property.   I freely admit that the town cannot entirely close up the street, or sell or give any part of it to any one; but I am not aware of any law by which a private donor or donee can compel the town to accept a street of any specified width.   If the town keeps open a street of suitable width, I see no reason why it cannot refuse to accept or subsequently abandon such part as may be neither necessary nor convenient for public use.   This is simply an abandonment of the public easement *pro tanto* and in no sense a gift, concession or conveyance to any one.

We all know that a well-paved street of forty feet would be much more useful than fifty feet of mud holes, and that it would cost proportionately more to pave a wider street than one of less width.   It is common knowledge that the city of

Washington, in spite of the national aid it constantly receives, found it impossible to bear the expense of paving its residence streets at their original width, and permitted a certain number of feet to be enclosed by the adjacent owners. As there, the fee never was in the adjacent owners, they acquired only such permissive use as the city might give them. In the case at bar the fee was already in the plaintiff, and the abandonment of the public use simply relieved that much of his land of the burden of the pre-existing easement.

*Connor, J.,* having been of counsel, did not sit on the hearing of this case.