H. M. IRWIN AND LILA G. IRWIN, HIS WIFE, v. CITY OF CHARLOTTE AND CHARLOTTE PARK AND RECREATION COMMISSION ET AL.

(Filed 26 January, 1927.)

1. **Deeds and Conveyances—Land Development—Maps—Streets—Parks —Equity—Estoppel—Judgments.**

The purchaser of land in a development of the owners, with registered plat showing the lands to be divided into blocks with streets, parks, etc., have the equitable right to the use of such streets, parks, etc., and such purchasers may be estopped from claiming such rights by their acts and conduct, as in this case by release and judgment to that effect.

2. **Dedication — Acceptance — Municipal Corporations — Withdrawal of Dedication—Statutes—Parks.**

The prospective dedication of streets, parks, etc., in the sale of a development of lands is not binding upon a city until acceptance, and neither the city nor the general public can acquire any rights thereunder against the owner of the land or purchasers from him where the offer of dedication has been withdrawn before acceptance, under the provisions of 3 C. S., 3846 (rr).

CLARKSON, J., not sitting.

APPEAL by the city of Charlotte and the Charlotte Park and Recreation Commission from *Schenck, J.,* at the October Term, 1926, of MECKLENBURG.

The issues were answered as follows:

1. Was plat recorded in Book 195, p. 663, registered by or with the knowledge and consent of the plaintiffs? Answer: Yes.

2. Did plaintiffs make conveyances by reference to said map recorded in Book 195, p. 663? Answer: Yes.

3. Was the word "Park" placed upon the map recorded in Book 195, page 663, placed thereon by inadvertence or mistake? Answer: Yes.

4. Has the legal and equitable owner of every lot shown on the map recorded in Book 195, page 663, register of deeds office for Mecklenburg County, executed a release to H. M. Irwin or had judgment by default final taken against him? Answer: Yes.

5. Has the Southern Power Company or the city of Charlotte ever executed a release to H. M. Irwin or had judgment by default final taken against them or it? Answer: No.

6. Has the city of Charlotte ever adopted any resolution accepting any dedication of the property described in the complaint? Answer: No.

7. Has the city of Charlotte ever exercised any authority or control over the property described in the complaint? Answer: No.

8. Has the Charlotte Park and Recreation Commission or its predecessor, Charlotte Park and Tree Commission, ever passed any resolution accepting any alleged dedication of the property described in the complaint? Answer: No.

9. Has the Charlotte Park and Recreation Commission or its predecessor, Charlotte Park and Tree Commission, ever exercised any supervision or authority or control over the property described in the complaint? Answer: No.

10. Did the Charlotte Park and Tree Commission refuse to accept the offer of dedication made in May, 1905, by H. M. Irwin of the said property described in the complaint? Answer: Yes.

11. Has the plaintiff, H. M. Irwin, and his predecessors in title maintained an open, notorious, adverse and continuous possession of the property described in the complaint under known and visible boundaries for more than twenty years? Answer: Yes.

12. Did the public generally accept any alleged offer of dedication of the lands described in the complaint? Answer: No.

13. Did the public generally maintain an open, notorious, adverse and continuous possession of this property described in the complaint under known and visible boundaries for more than twenty years? Answer: No.

14. Was the paper-writing recorded in Book 591, page 526, in the office of the register of deeds for Mecklenburg County filed by H. M. Irwin on 6 August, 1925, as alleged in the complaint? Answer: Yes.

15. Was the map recorded in Map Book No. 3, page 47, in the office of the register of deeds for Mecklenburg County filed for record by H. M. Irwin in May, 1923? Answer: Yes.

It was thereupon adjudged that the plaintiff, H. M. Irwin, is the owner in fee of the land in controversy, free from any claim, right, title, interest, or easement of any nature whatsover, and that he recover his costs against the appealing defendants.

*Preston & Ross for plaintiff.*
*Walter Clark for Irwin Place, Inc.*
*James A. Lockhart and Frank McNinch for the Board of School Commissioners of the City of Charlotte.*
*Fred B. Helms and H. L. Taylor for the City of Charlotte and the Charlotte Park and Recreation Commission.*

ADAMS, J. Harriet M. Irwin devised all her property to her husband for life, directing that after his death it should be equally divided among her children. Partition was duly made and the plaintiff, H. M. Irwin, acquired title to the land in controversy. He and his wife thereafter contracted in writing to sell and convey this land to Irwin Place, Inc., and subsequently tendered a deed which was refused on the ground that the plaintiff had caused to be recorded in the office of the register of deeds a map of this and adjacent property showing lots, streets, alleys, and a park, and had thereby irrevocably dedicated the land in suit to be used as a park by the general public.

It is alleged, and there is evidence tending to show, that in May, 1905, the plaintiff and the other heirs of Harriet Irwin tendered the property in controversy to the Charlotte Park and Tree Commission (now the defendant Park and Recreation Commission) to be used as a city park, and that this tender, in like manner with one afterwards made, was declined, and that the plaintiff has since held the property claiming it as his own. The map was registered in 1905, before partition of the devised land was made. On 20 August, 1909, the children and devisees of Harriet Irwin executed a deed to the Durham and Murphy Land Company, covenanting that retained lots and the land on the north side of Sixth Street opposite the lots between Irwin Avenue and Sycamore Street should be subject, without exception as to the time of completing the buildings, to the conditions and restrictions contained in this conveyance, and in November, 1909, a revised map was registered. In answer to certain issues the jury found that the word "park" had been placed upon the registered map by inadvertence or mistake; that the owner of every lot shown on the registered map had been concluded as to the alleged easement either by executing a release or by judgment; that neither the city nor the Park Commission had ever accepted the alleged dedication or exercised any control over the property; that the plaintiff had had open, notorious, adverse, and continuous possession of the property under known and visible lines and boundaries for more than twenty years before the beginning of the action; and that the public had never accepted the offer of dedication. It was also found (issues 14 and 15) that the plaintiff had filed in the register's office a

map purporting to correct the inadvertence or mistake; also a declaration withdrawing the asserted dedication in accordance with the statute. 3 C. S., 3846(rr).

We understand it to be admitted that the board of school commissioners was made a party defendant only because it has contracted to purchase the land from the Irwin Place, Inc., and that the Park and Recreation Commission is interested, not by virtue of any special contractual relation, but because it is vested with the control and management of property in and near the city now used or afterward to be acquired and used for the purpose of a park. Private Laws 1905, ch. 32, sec. 9.

In the voluminous record there are many assignments of error, but the controlling principles are few and free from special perplexity. There are decisions which hold that where the owner lays his land off into lots and streets with a view to making sales in reference to them and causes a plat or map of the lots, streets, alleys and parks to be registered and executes deeds referring to the map as a part of the description he thereby dedicates the streets, alleys and parks to the use of those who purchase the lots and under some circumstances also to the use of the public. *Conrad v. Land Co.,* 126 N. C., 776; *Hughes v. Clark,* 134 N. C., 457. The reason of the rule is that the grantor induces purchasers to believe that the streets, alleys and parks will be kept open for their benefit; but the principle is equitable in its nature and is founded upon the idea that it would be at least unjust for the landowner to question or limit the right of his grantees to the privileges and easements expressly given or implied from his conduct. *Sexton v. Elizabeth City,* 169 N. C., 385. The doctrine is further elucidated in *Wittson v. Dowling,* 179 N. C., 542, in which it is said: "It is the recognized principle here and elsewhere that, when the owner of suburban property or other has the same platted, showing lots, parks, streets, alleys, etc., and sells off the lots or any of them, in reference to the plat, this, as between the parties, will constitute a dedication of the streets, etc., for public use, although not presently opened or accepted or used by the public. *Elizabeth City v. Commander,* 176 N. C., 26; *Wheeler v. Construction Co.,* 170 N. C., 427; *Green v. Miller,* 161 N. C., 25. In many of the cases on the subject, this is spoken of as an irrevocable dedication, but the principle is dependent on the doctrine of equitable estoppel, giving the purchaser who has bought and taken title in reference to the plat, to have the same observed in its integrity. It is through his position and by reason of it that the equity must be made effective, and so far as examined, in all the cases where this expression has been used, the purchasers, or some of them, were insisting on their rights in the matter, or were in a position to do so. *Green v.*

*Miller, supra; Hughes v. Clark,* 134 N. C., 457-463; *Collins v. Land Co.,* 128 N. C., 563; *Conrad v. Land Co.,* 126 N. C., 776; *S. v. Fisher,* 117 N. C., 733."

In addition it is said that so far as the general public may be concerned, without reference to the claims and equities of the individual purchaser, a dedication is never complete until acceptance; neither burdens nor benefits with attendant duties may be imposed upon the public unless in some proper way it has consented to assume them; and until acceptance is established it should be termed a revocable offer of dedication. This principle is controlling in view of the verdict and of the fact that each of the plaintiff's grantees is concluded, as stated, by judgment or release; from which it results that the defendants are not entitled to the property in question by virtue of the plaintiff's alleged dedication. This is the vital and decisive question, a minute discussion of which would involve an unnecessary repetition of decided cases and an unnecessary review of established principles.

An inspection of the record with reference to the specific assignments of error discloses no convincing reason for awarding a new trial, several of the assignments having been made no doubt as a matter of precaution. The seventh, to which the appellants attach importance, points out no reversible error, since in our opinion the verdict is sufficient to sustain the judgment independently of C. S., 3846(rr); and those numbered 23-30 relate to matters which it was not improper for the jury to consider on the question of dedication. Assignment 39 is addressed to a ruling which required counsel to file written powers of attorney. This order applied to all counsel appearing in the case, and we are unable to discover any just cause of complaint on the part of the appellants. The remaining assignments are to be determined by familiar principles and require no discussion.

We are satisfied that upon the record no reversible error appears.

No error.

CLARKSON, J., not sitting.