This is an injunctive proceeding brought by plaintiff against the defendant, a municipal corporation, "enjoining it from its efforts to require the plaintiff to conform to its said map or its said resolution, and that the said official map and the said resolution and the notice to the plaintiff thereunder be declared to constitute a cloud upon the plaintiff's title and removed therefrom, and that plaintiff be declared to be the owner in fee simple of his said lands, free and discharged from any effort or right of the defendant therein in accordance with its said official map." *Page 594 
The complaint, in paragraph 3, sets forth by metes and bounds the land in controversy and plaintiff prays that the cloud on his title be removed.
"This plaintiff is informed and believes that he is the owner of said lands above described, and especially that portion at the south end thereof which the defendant seeks to take and claim as Town Commons, and that he and those under whom he claims have had the same in actual possession under a fence and have reclaimed the same and otherwise used it continually and adversely to all persons for more than thirty years, and the said defendant, and no other person, has attempted to use the same in any respect whatsoever except under and by permission of this plaintiff and his predecessors in title."
The defendant answering says:
"3. Answering the third paragraph of the complaint defendant says that insofar as the land described therein covers or conflicts with the public streets, squares, commons or lands belonging to the town of Lake Waccamaw, as set out on a map or plat thereof, which is registered in the office of register of deeds of Columbus County in Plat Book No. 1, page 59, the same is denied, and as this defendant has no interest in the lands described in the third paragraph of the complaint which in no way covers or conflicts with the streets, squares and public commons of the defendant town as set out in the map aforesaid, it neither admits nor denies the allegations of the third paragraph of the complaint with reference to such lands."
It sets up an order of defendant requiring plaintiff to remove his fence and other obstructions on the streets, public squares and commons of the defendant which were in the town of Flemington, unincorporated, and taken into defendant town under Private Laws 1911, chapter 282. That plaintiff has trespassed on streets, public squares and commons of defendant and has attempted to lay claim by possession. That in 1852 Josiah Maultsby, the owner of the property, made a map and recorded it showing public streets, squares and commons, and executed deeds to various parties and incorporated in the deeds the following:
"And the said Josiah Maultsby doth also give, grant, bargain, sell and convey unto the said (grantee) and to all other good citizens the right and privilege to use all the streets, public squares and space between said lake (Lake Waccamaw) and said railroad opposite said town, as public highways, together with all and singular the tenements and hereditaments thereupon belonging or in any wise appertaining."
"That the said streets, public squares and commons of the town of Lake Waccamaw (Flemington) as laid out by the said Josiah Maultsby were dedicated to the use of the public and the public acquired an easement therein, and, with defendants." *Page 595 
A temporary restraining order was issued by Grady, J., 31 December, 1928. On 29 January, 1929, Judge Cranmer ordered that the restraining order be continued to the final hearing. At February Term, 1930, the matter was referred to Chas. G. Rose, Esq., as referee.
(Defendant excepts to the foregoing order of reference and demands a trial by jury on the issues raised by the pleadings herein.)
The referee made a report of the findings of fact and conclusions of law:
1. Josiah Maultsby owned certain lands in Columbus County, N.C. lying on the north side of Lake Waccamaw and between the lake and the Wilmington Manchester Railroad — later the Wilmington, Columbia Augusta Railroad — and now the Atlantic Coast Line Railroad Company, which land is now a part of the town of Lake Waccamaw, and includes the land described in paragraph 3 of the complaint.
2. Josiah Maultsby, on 13 November, 1852, executed deeds to various parties (setting them forth).
3. Attached to each of these deeds was a map or plat of the "Town of Flemington," showing each lot numbered, together with certain streets, one called "Broadway," another called "Perch Street," a space next to the lake called "Commons" and also a space designated thereon as "Public Square." The plat was transcribed in the records in the office of the register of deeds of Columbus County, N.C. on the margin of the page of Book L, where the said deeds are recorded.
4. Each of said deeds referred to in the finding No. 2 contains a clause reading: "And the said Josiah Maultsby doth also give, bargain, grant and sell to the said (grantee in the deed) and to all other good citizens, the right and privilege to use all the streets, public squares and spaces between the said lake and the said railroad opposite the said town as public highways."
5. By mesne conveyances, prior to and during the early part of the year of 1894, H.B. Short and C. O. Beers acquired the fee simple to all the lots located in the plat of the "Town of Flemington," as well as to a tract of two acres of land lying between "Flemington" and the lake. Many of the title deeds describe the lots by reference to lot number and by further reference to the registration of the plat in Book L.
6. By warranty deed dated 20 January, 1894, registered 3 March, 1894, in Book KK, page 325, in the office of register of deeds for Columbus County, H.B. Short and wife conveyed to C. O. Beers all of the lots which the grantors then owned and which were located west of Broadway, as designated on plat, together with the tract of two acres lying between "Flemington" and the sand bar of Lake Waccamaw. *Page 596 
7. At some time during the year of 1894 C. O. Beers erected, and those claiming under him have thereafter continuously, openly and notoriously maintained a fence, practically as now located, around all of the lots which he then owned, around the two acres of land lying north of the lake, and also including the space marked "Perch Street," and so much of the space marked "Public Square" as lies west of Broadway on the said plat of "Flemington."
8. F. B. Gault, plaintiff, under the will of C. O. Beers, owns and is in possession of all the property and rights conveyed to C. O. Beers by deed from H.B. Short and others.
9. F. B. Gault, plaintiff, and those under whom he claims, have since the date of the deed to C. O. Beers, exercised exclusive and adverse possession and control over all of the lands described in paragraph 3 of the complaint, having erected and lived in a dwelling-house on a portion of the land, having planted shrubbery, have planted pecan and other trees thereon, have cultivated portions of the same, have planted and cultivated a garden on the portion of the "Public Square" which lies west of Broadway, and have otherwise done and exercised acts consistent with complete and exclusive ownership and possession, claiming the property as their own.
10. More than twenty years ago the railroad company, by and with the consent of C. O. Beers and/or F. B. Gault, erected and for a time maintained two toilets for public use in the swamp or wood north of the lake and south of the town of "Flemington" (included in a tract of two acres), which toilets were approached by wooden walkways which, for a time, passed over the fence maintained by C. O. Beers and/or F. B. Gault. These toilets have long since been destroyed, and they are not now in use and have not been for several years.
11. About 1894 shade trees were planted by C. O. Beers and/or F. B. Gault parallel with the western line fence of the property described in paragraph 3 of the complaint, practically at a uniform distance therefrom and on the outside or eastern line of a sidewalk running on the west side of Broadway; many of these trees are twelve inches or more in diameter at their base at the present time.
12. No one has ever done any acts, consistent with a public use of the same as of right or in, or upon any portion of the land described in paragraph 3 of the complaint, or which was in any way adverse to the possession and control of F. B. Gault, and those under whom he claims.
13. The so-called "Town of Flemington" was never incorporated. No attempt was ever made at any time to exercise any corporate functions as a municipal corporation, and it was only the name of a particular location as made on the plat prepared for Josiah Maultsby, and referred to in findings 2, 3 and 4. *Page 597 
14. The town of Lake Waccamaw was incorporated by the General Assembly of 1911, by chapter 282 of the Private Laws of session of 1911, and has since that time maintained its existence as a municipal corporation.
15. By chapter 131 of the Private Laws of session 1911, certain trustees therein named were appointed "to take possession of and look after and protect The Public Square given by Josiah Maultsby to the citizens of the State of North Carolina," which said Public Square was by said act in part bounded "on the west by the street or road leading from W. C. A. Railroad." This delimitation of the "Public Square" does not impinge upon any portion of the lands described in paragraph 3 of the complaint.
16. In 1928 the board of commissioners of the town of Lake Waccamaw caused J. A. Loughlin, surveyor, to make a complete survey and plat of the town, including as a part of the town the old "Town of Flemington." At a meeting of the board of commissioners, held on 4 December, 1928, this plat was unanimously adopted by the board as the official plat or map of the town of Lake Waccamaw, and by order of the board the same was registered in the office of the register of deeds for Columbus County, N.C. in Book of plats No. 1, at page 51.
17. In 1905 certain parties attempted to make and file four original entries on various portions of the land appearing as "commons," "public square" and other portions of the land designated on the plat of the old "Town of Flemington," to which entries protests were duly filed. F. B. Gault was later made a party to these proceedings, which was then pending in the Superior Court of Columbus County, and at the February Term, 1917, the consent judgment was entered consolidating all of the proceedings, and F. B. Gault was declared to be the owner in fee simple and entitled to the possession of the tracts of land set out and described in the four entries.
CONCLUSIONS OF LAW.
From the foregoing findings of fact the referee reaches the following conclusions of law:
1. Josiah Maultsby, in 1852, offered to dedicate to public use, for the benefit of the various lot owners, certain streets, squares and commons, as set out on the plat of "Flemington," as appears of record. Before actual acceptance or use of these properties offered, H.B. Short and C. O. Beers, having acquired the fee-simple title to all of the lots in the plat of "Flemington," had the right to withdraw the offer to dedicate and to close any and all of the properties theretofore offered and exercise exclusive ownership and control thereof.
2. There being no corporate entity in 1894, as the "Town of Flemington," all legal and equitable rights as to the squares, streets and *Page 598 
commons were in H.B. Short and C. O. Beers, and when C. O. Beers and those claiming under him fenced in the property on the west side of Broadway and described in paragraph 3 of the complaint, and began to exercise exclusive possession and control of the same, the statute of limitations began to run in favor of C. O. Beers, and those claiming under him.
3. Since there was no corporate existence of the "Town of Flemington," and no formal action, looking to acceptance of the offer to dedicate, could be taken for and in behalf of the general public, and since there has been no user as of right of the properties offered to be dedicated to the public, in the year of 1894, none of the property located within the boundaries in paragraph 3 of the complaint included any part of what could be properly designated as "Public road, street, lane, alley or public way," and the provision of section 435 of the Consolidated Statutes of North Carolina do not apply to the facts of this case.
4. F. B. Gault, the plaintiff, having since 1894 maintained open, notorious, adverse and exclusive possession and control of the property, under known and visible lines and boundaries, claiming and using it as his own, he is now the owner in fee simple, and entitled to the exclusive possession of all of the land described in paragraph 3 of the complaint, except so much as he has heretofore conveyed to Sloan.
5. F. B. Gault is entitled to a perpetual injunction, restraining and enjoining the defendant, and all persons purporting to act under its authority, from doing any act inconsistent with his fee-simple ownership thereof.
The findings of fact and conclusions of law sustained the contentions of plaintiff. The matter was heard on exceptions and assignments of error by defendant before Daniels, J., who sustained the referee's findings of fact and conclusions of law. The court below refused to submit certain issues tendered by defendant to be passed on by the jury. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
The first contention of the defendant: "Were the streets, squares and commons of the old (unincorporated) town of Flemington dedicated to the use of the public and accepted and used by the public, by virtue of said dedication?" On the present record, taking all the evidence, we find no facts or law to support this contention. We *Page 599 
think there is a distinction between land that is in a municipality mapped and platted and deeds made to the lots in which streets, squares and commons are dedicated and accepted by the municipality, and land that is mapped or platted and deeds made to the lots in which streets, squares and commons are dedicated outside a municipality. As to the first attitude the following observation is made in McQuillin's Municipal Corp., Vol. 4, 2d ed., part of sec. 1662 and 1663, pp. 471-2. "Most of the streets, alleys, squares and parks in municipal corporations have been acquired by a voluntary dedication thereof by the owner to the public. The law relating to dedication is therefore of much importance as a part of the law of municipal corporations. . . . The owner's offer, either express or implied, of appropriation of land or some interest or easement therein to public use, and acceptance thereof, either express or implied (when acceptance is required) constitute dedication. The intention of the owner to dedicate and acceptance thereof by the public are the essential elements of a complete dedication." Green v. Miller, 161 N.C. 24; Elizabeth City v. Commander,176 N.C. 26; Wittson v. Dowling, 179 N.C. 542; Irwin v. Charlotte,193 N.C. 109.
When there is a dedication and acceptance by the municipality or other governing body of public ways or squares and commons in this jurisdiction the statute of limitations does not now run against the municipality or governing body. Public Laws 1891, ch. 224, C. S., 435: "No person or corporation shall ever acquire any exclusive right to any part of a public road, street, lane, alley, square or public way of any kind by reason of any occupancy thereof or by encroaching upon or obstructing the same in any way, and in all actions, whether civil or criminal, against any person or corporation on account of an encroachment upon or obstruction or occupancy of any public way it shall not be competent for a court to hold that such action is barred by any statute of limitations." Threadgill v. Wadesboro,170 N.C. 641; R. R. v. Dunn, 183 N.C. 427. Prior to this statute, under former statutes, the maxim "Nullum tempus aut locus occurritt regi" did not obtain here. Threadgill, supra. See Tadlock v. Mizell, 195 N.C. 473.
McQuillin, supra, part sec. 1702, at p. 551, states the law thus: "The general rule, however, seems to be that the platting of land and the sale of lots pursuant thereto constitute a dedication, if it may be so called, of the public places delineated upon the plat only as between the grantor and purchaser, and that, so far as the municipality is concerned, such acts amount to a mere offer of dedication, and there is no complete dedication without an acceptance of some kind by the municipality."
In S. v. Fisher, 117 N.C. at p. 740, the law is stated as follows: "When the defendant opened up the street then outside the confines of *Page 600 
the city of Greensboro (in the year 1890), if, before the subsequent passage of the act (Laws of 1891), which extended the limits so as to include it, he had sold a single one of the lots abutting on this apparent extension of North Elm Street, he and those claiming under him would have been estopped from denying the right of such purchaser and those in privity with him to use the street, as laid down in the plot and called for as his boundary line in the deed conveying it to him, to all intents and purposes as a highway, and this dedication of the easement appurtenant to the land sold would have been, as between the parties, irrevocable, though the street had never been accepted by the town for public use. Moose v. Carson,104 N.C. 431. The estoppel in pais arising out of the fact that the grantee in such cases has been induced to part with money or its equivalent upon the representation of the grantor that a highway would be opened, makes the street as between them what it was represented to be. Grogan v.Town of Haywood, 4 Fed. Rep., 164. The offer of the easement to the public as well as the grant of the appurtenant right to its use as a highway would thus have been made irrevocable, and though the city of Greensboro could not have been, against the wish of its governing officers, subjected to the burden of keeping the open way in repair, yet they might have accepted, as a continuing offer to the city at any future time, the street which as between the parties to the deed the grantor could not deny was dedicated to public use. But there was no such sale and consequent estoppel to prevent the defendant from revoking a license apparently given to the public to use the extension or from recalling the offer. Whatever might have been the effect of its acceptance at an earlier period the city did not signify in the proper manner its willingness to assume the responsibility of making it a part of the highway under its care, until the alleged offer was revoked."Harris v. Carter, 189 N.C. at p. 298.
McQuillin, supra, sec. 1699, and part of 1700, p. 544-5: "Unless forbidden by statute or charter provision a municipality has authority to accept a dedication of property for the public use. Whether property outside the limits of the municipality may be accepted would seem to depend on the purpose for which the property is dedicated. . . . Unless otherwise provided by statute or charter, it is elementary that an acceptance is necessary." A municipality has not power to accept the dedication of a street outside of its territorial limits. St. Louis v. St. LouisUniversity, 88 Mo., 155, 159. Dedication of streets outside of city may be accepted by the city on subsequent extension of city limits. Smith v.Dothan, 211 Ala. 338; Wheeler v. Construction Co., 170 N.C. 427. SeeChimney Rock Co. v. Lake Lure, ante, p. 171.
In Elliott on Roads and Streets, Vol. 1, 4th ed., part sec. 122, at p. 140, is the following: "Dedication is the setting apart of land for the *Page 601 
public use. It is essential to every valid dedication that it should conclude the owner, and that, as against the public, it should be accepted by the proper local authorities or by general public user."
The second contention of defendant: "Is plaintiff entitled to hold possession of a portion of said streets, squares and commons by adverse possession?" We think so. Under the facts and circumstances of this case we find, in McQuillin, supra, part sec. 1684, p. 513-14: "There is some conflict of opinion as to whether a purchaser of a lot with reference to a plat, showing streets and alleys, has a right to insist upon the opening of a street on which his property does not abut or whether his right in regard to such streets and public ways and other public places is limited to those places on which his land about. The rule that the purchaser has a right, as against the original owner to have all the streets and alleys, designated upon the map, kept open and unobstructed has been laid down in a few jurisdictions." This principle prevails in this jurisdiction. Conrad v.Land Co., 126 N.C. 776; Hughes v. Clark, 134 N.C. 457; Sexton v.Elizabeth City, 169 N.C. 385. See limitations in Stephens v. Homes Co.,181 N.C. 335; Homes Co. v. Falls, 184 N.C. 426.
The town of Flemington was not incorporated, but the land was owned by one Josiah Maultsby, who made a map or plat of it, and this was attached to the conveyances and the map or plat was transcribed in the office of the register of deeds. In the conveyance to each grantee was the following: "And the said Josiah Maultsby doth also give, grant, bargain, sell and convey unto the said (grantee) and to all other good citizens the right and privilege to use all the streets, public squares and space between said lake (Lake Waccamaw) and said railroad opposite said town, as public highways, together with all and singular the tenements and hereditaments thereupon belonging or in any wise appertaining." The evidence sustained the referee's material findings of fact that the plaintiff and those under whom he claims title have been in possession of the land in controversy described by metes and bounds in paragraph 3 of the complaint under known and visible lines and boundaries adversely to all other persons for twenty years. In fact, the record shows thirty years.
The defendant town of Lake Waccamaw had no right, title, interest or jurisdiction in the unincorporated town of Flemington, the private property of others originally belonging to Maultsby. When it took in this property it did so subject to the rights of the property owners in the development. In closing up, by plaintiff and those from whom he claims, any streets, public squares and commons injunctive relief could have been resorted to by any lot owner in the development. In the Wheeler case, supra, at p. 429, we find: "Platting the land into lots *Page 602 
and streets and selling the lots by reference to the map dedicated the streets thereon to the public in general and to the purchasers of the lots in particular. The intention to dedicate is manifested by the maps and deeds. Tise v. Whitaker, 146 N.C. 376. It is immaterial whether the streets were opened at the time of dedication or not; they must be at all times free to be opened as occasion may require. The acceptance or nonacceptance by the municipality does not affect the title thereto. Hughesv. Clark, supra. Injunction is the proper remedy, as is held in that case. The obstruction and closing up of the street creates a nuisance and each purchaser can, by injunction or other proper proceeding, have the nuisance abated." The land mapped or platted in the above action was located in the corporate limits of the city of Charlotte, N.C.
Any lot owner or owners who acquired a deed to any lot in the development had a legal right to have the "streets, squares and commons" platted and recorded, kept open as a "unit" or in the entirety. No lot owner did this or objected, but permitted the plaintiff and those under whom he claimed to fence up and otherwise take actual possession of the land in controversy, including the "streets, squares and commons," and plaintiff has, since 1894, had open, notorious, adverse and exclusive possession and control of the property under known and visible lines and boundaries, claiming and using it as his own. C. S., 430, is as follows: "No action for the recovery or possession of real property, or the issues and profits thereof, shall be maintained when the person in possession thereof, or defendant in the action, or those under whom he claims, has possessed the property under known and visible lines and boundaries adversely to all other persons for twenty years; and such possession so held gives a title in fee to the possessor, in such property, against all persons not under disability."
In Locklear v. Savage, 159 N.C. at p. 237-8, it is said: "What is adverse possession within the meaning of the law has been well settled by our decisions. It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner," citing numerous authorities. Johnson v. Fry, 195 N.C. 832. On all the evidence, from the view we take of this case, the plaintiff had a statutory title in fee to the land. Any minor acts or expressions *Page 603 
of plaintiff are immaterial. In Booth v. Hairston, 193 N.C. 281, is the following observation, citing numerous authorities: "Our system of appeals is founded on public policy and appellate courts will not encourage litigation by granting a new trial which could not benefit the litigant and the result changed upon a new trial, and the nongranting was not prejudicial to his rights." The plaintiff so contends and we think the same correct.
"Upon the whole record, our contention is that the plaintiff is entitled to recover upon the facts found by the referee; in fact, there is no real conflict in the evidence and the plaintiff is entitled to recover upon the admissions. The referee so found, the trial court has approved these findings, and we submit that the judgment of the court below ought to be affirmed."
We do not think the court below erred in overruling defendant's motion for judgment as of nonsuit at the conclusion of all the evidence. C. S., 567. We think the issues not material as we construe the evidence and the view we take of the law. The exceptions and assignments of error of defendant as to the findings of fact and conclusions of law by the referee and court below cannot be sustained. On the entire record we see no prejudicial or reversible error in the judgment of the court below.
Affirmed.