L. D. BRYAN v. THE CITY OF SANFORD; THE BOARD OF ALDERMEN
OF THE CITY OF SANFORD; AND HAROLD T. MAKEPEACE, MAYOR;
LYNN PERRY, JOHN T. SALMON, THURMAN F. NANCE, BERNICE
C. KELLY, THOMAS C. BARKER, SAM DAVIS AND O. A. ZACHARY,
MEMBERS OF THE BOARD OF ALDERMEN OF THE CITY OF SANFORD.

(Filed 2 May, 1956.)

**1. Municipal Corporations § 37—**

Where a municipality incorporates in its zoning regulations a registered
map which shows an intersection of streets, the intersection has four
corners within the purview of G.S. 160-173, notwithstanding that one of
the streets is not actually opened or used for public purposes beyond its
intersection with the other. Therefore, where two of the corners are zoned
for business purposes, the owner of another corner at the intersection is
entitled to have his lot also zoned for business purposes.

**2. Dedication § 4—**

Where a street is dedicated to the public by a registered map and the
sale of lots as bounded on a proposed street shown on the map, the
city accepts the dedication by its acceptance of the map as official and
its incorporation in a subsequently enacted zoning ordinance.

**3. Mandamus § 2a—**

Mandamus will lie to compel a municipality to zone one of four corners
at an intersection in the same manner as it had zoned two other corners
at the intersection, such action being a ministerial duty of the city under
G.S. 160-173.

JOHNSON, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *McKeithen, Special Judge,* November Term,
1955, of LEE.

This was an action to require the defendants to re-zone a lot owned
by him in the City of Sanford in accord with the provisions of the
statute, G.S. 160-173.

Plaintiff alleged he was the owner of a lot designated as Lot #1 in
Block 157 on the official map of the City of Sanford; that this lot is
situated on the southwest corner of Gray and Third Streets; that Third
Street runs approximately north and south, and Gray Street extends
from Chatham Street eastwardly to and intersects with Third Street,
and, as laid down in the map of the City (hereinafter referred to as the
Deaton map), extends three blocks east of Third Street to the right of
way of the Atlantic and Western Railroad; that Gray Street from
Chatham Street to Third Street is open, used and maintained by the
City, but east of Third Street it has not been opened, but was sur-
veyed, platted and dedicated as a public street; that on each side of
Gray Street as platted there are laid out a number of city blocks, with

numbered lots, and lots have been sold on either side as fronting on Gray Street. Plaintiff further alleged that Lot #4 in Block 153 is situated on the northwest corner of the intersection of Gray and Third Streets; that Lots #1 and #2 of the Barnes subdivision are situated on the northeast corner of the intersection; that Lots A and B in Block 156 are situated on the southeast corner of the intersection, and plaintiff's lot No. 1 in Block 157 is situated on the southwest corner of the intersection.

It was further alleged that on 2 February, 1954, the defendants (hereinafter referred to as the City) adopted a general zoning ordinance under the statute (Chapter 160, General Statutes) and divided the City into designated business, industrial, and residential districts, and imposed restrictions as to the use of premises in each district; that the ordinance referred to and incorporated as a part thereof the Deaton map; that under this ordinance all four corners of the intersection of Gray and Third Streets, including plaintiff's lot, were zoned as industrial; that at that time the building on plaintiff's lot was being used by plaintiff as office, storeroom and warehouse for the conduct of his plumbing and heating business.

Plaintiff further alleged that on 21 June, 1955, the Board of Aldermen of the City adopted a resolution designating the northwest and southwest corners of the intersection of Gray and Third Streets as residential, but did not change the zoning of the corners on the east side of Third Street; that on 6 September, 1955, plaintiff made written application to the defendant Board requesting re-districting of his lot at the southwest corner of Gray and Third Streets to conform to the other corners, as required by G.S. 160-173; that thereafter the defendant Board rejected his request and refused to re-district said lot. Thereupon plaintiff instituted this action, praying for writ of *mandamus* requiring defendants to re-district his lot as provided by the statute.

The defendants, answering, admitted the facts alleged in the complaint as to the location of plaintiff's lot, and the actions of the Board of Aldermen of the City in re-zoning the plaintiff's lot from industrial to residential, but alleged that Gray Street as platted east of Third Street was never opened, used or maintained by the City, and never became a public street; that there are no actual corners on the east side of Third Street and no opening used by anyone as a passageway east of Third Street, and that the provisions of G.S. 160-173 have no application.

. By consent the cause was heard without a jury. The court found that the extension of Gray Street east of Third Street as shown on the Deaton map has never been opened, used or maintained by the City as a public street; that the Board of Aldermen of Sanford on 2 Febru-

ary, 1954, adopted a general zoning ordinance for the City under the provisions of the statute, and divided the municipality into designated business, industrial and residential districts; "that said ordinance refers to and incorporates as a part thereof" the map of Sanford herein referred to as the Deaton map; "that the map made a part of the zoning ordinance is a copy of the map by Deaton and Cooke, dated December 18, 1928"; that the Deaton map had been in 1929 accepted and paid for by the City by official action of the Board of Aldermen; "that said map shows numerous lots fronting on the area" between the platted lines of Gray Street east of Third Street, "and all of said lots have been conveyed by descriptions which designate Gray Street as a boundary line, including the lots immediately east of Third Street"; that the area on both sides of Third Street north and south of Gray Street was originally zoned industrial, and the re-zoning resolution adopted 21 June, 1955, changed the character of plaintiff's lot on the southwest corner of the intersection from industrial to residential, but did not change the zoning of the area east of Third Street and fronting on Gray Street as platted. It was stated on the argument that the Deaton map had been duly registered.

Upon the facts found, the court concluded that there were no corners on the east side of Third Street opposite Gray Street within the purview of G.S. 160-173, and that plaintiff was not entitled to have his lot re-zoned from residential to industrial as prayed.

The plaintiff excepted and appealed.

*J. G. Edwards and J. Allen Harrington for plaintiff, appellant.*
*Orton J. Cameron for defendants, appellees.*

DEVIN, J. The question presented by this appeal is this: Did the incorporation of the so-called Deaton map as a part of the zoning ordinance of the City of Sanford, showing the intersection of Gray and Third Streets and the platted extension of Gray Street eastward beyond Third Street, have the effect of constituting an intersection with four corners within the purview of section 160-173 of the zoning statutes? Or, does the fact that Gray Street east of Third Street had never been actually opened, used or maintained by the City preclude the application of the statute?

There was no controversy as to the facts. It was found by the court that when the City of Sanford on February 2, 1954, adopted a general zoning ordinance under the provisions of the statute, it therein referred to and incorporated as a part thereof "a map referred to as 'Sanford, N. C. Zoning map' showing the various districts; that the map made a part of the zoning ordinance is a copy of the map by Deaton and

Cooke, dated December 18, 1928"; that the Deaton map was in 1929 duly accepted and paid for by the City by vote of the Board of Aldermen.

The court further found that the four corners of the intersection of Gray and Third Streets were shown on the map and were designated and identified by numbered lots and blocks situated at each corner of the intersection.

It is provided in G.S. 160-173 that when at any intersection of streets the City promulgates regulations and restrictions as to two or more of the corners at said intersection, the City shall upon the written application from the owner of the other corners of the intersection re-district and regulate the remaining corners in the same manner.

The plaintiff's position is that since the City originally zoned all four corners of this intersection as industrial and has now re-zoned two corners only, the northwest and southwest corners, as residential, leaving the other corners unchanged, he is entitled upon written application to have his lot on the southwest corner restored to the original classification as industrial, in accord with the proviso in G.S. 160-173.

The defendants' position is that there never were corners on the east side of Third Street, and hence the City had authority to change the classification of the only two corners, which were on the west side of Third Street, the northwest and southwest corners, from industrial to residential. The defendants argue that the mathematical lines on the map showing extension of Gray Street east of Third Street could not and did not constitute an acceptance by the City of unopened and unused land as a public street. The plaintiff, however, calls attention to the fact that the Deaton map was incorporated in and became a part of the zoning ordinance itself, and thereby established the lines and corners therein set forth for zoning purposes, and that blocks and subdivisions east of Third Street were laid off and lots sold as bounded by Gray Street as the lines of such street were designated and established by the official map. Hence plaintiff contends that by the City's ordinances and actions the dedication of the eastern extension of Gray Street has been accepted and determined as a public street, to the extent that four corners at the intersection have been established within the meaning of the statute.

In *Marren v. Gamble*, 237 N.C. 680, 75 S.E. 2d 880, the proviso of G.S. 160-173 was considered and analyzed, and the Court, speaking through *Ervin, J.*, said: "When its phraseology is reduced to simple terms, it merely declares that whenever the legislative body of a municipality zones two or more corners at an intersection of streets in the corporate limits of a municipality in a *certain* way, 'it shall be the duty of such legislative body upon written application from the

owner of the other corners'. of the intersection to rezone such other corners in the *same manner.*"

In *Robbins v. Charlotte,* 241 N.C. 197, 84 S.E. 2d 814, a factual situation similar in some respects to the instant case was considered by this Court. In that case it appeared that Brandywine Road intersects but does not cross Selwyn Avenue. There was no extension of Brandywine Road beyond Selwyn Avenue, nor was there any usable way. It was said that this constituted a "dead-end" for Brandywine Road at Selwyn Avenue, and the property opposite was characterized as forming the "top of the 'T'." The Court held in an opinion written by *Johnson, J.,* that the proviso of G.S. 160-173 could not be extended to cover only two corners, and that the area along the top of the "T" at the dead-end of the intersection could not be treated as a corner within the meaning of the statute.

However, we think the instant case distinguishable from the *Robbins case,* for the reason that here the extension of Gray Street beyond Third Street had been surveyed and laid out on a map which was accepted officially by the City, and there were laid out on this map the lines of Gray Street as extending east beyond Third Street for several blocks, and on this map were the lines of several blocks abutting on Gray Street, in consequence of which were sold lots described as bounded by the lines of Gray Street as shown on the map. In this situation, the City of Sanford in adopting the zoning ordinance incorporated this map as a part of the zoning ordinance showing four corners at this intersection.

We think the area within the platted lines of the extension of Gray Street had been dedicated to public use by the recorded map and the sale of lots as bounded thereby, and that the City by its acceptance of the map as official and incorporating it in, and as a part of, its zoning ordinance, had signified its acceptance for all purposes connected with its zoning regulations.

It would seem to follow as a logical conclusion that in so far as the zoning ordinance was concerned, there were four corners established at the intersection of Gray and Third Streets, and that the provisions of G.S. 160-173 are applicable.

The established rule in this jurisdiction is that the platting of land showing streets and public places and sale of lots pursuant thereto, constitutes a dedication of the public places delineated upon the plat as between the grantor and the purchaser. But in so far as the municipality is concerned, this constitutes only an offer of dedication, and there is no complete dedication without an acceptance of some kind by the municipality. *Gault v. Lake Waccamaw,* 200 N.C. 593, 158 S.E. 104; *Rowe v. Durham,* 235 N.C. 158, 69 S.E. 2d 171; *Russell*

PARIS *v.* BUILDERS CORP.

*v. Coggin,* 232 N.C. 674, 62 S.E. 2d 70; *Irwin v. Charlotte,* 193 N.C. 109, 136 S.E. 368; *Wheeler v. Construction Co.,* 170 N.C. 427, 87 S.E. 221; *Blowing Rock v. Gregorie,* 243 N.C. 364, 90 S.E. 2d 898.

However, evidence of acceptance would not be confined .to use and maintenance of the land as such. Acceptance may be manifested by the adoption as official of a map delineating areas as public streets or places, followed by official acts and ordinances recognizing their character as such.

"Recognition of dedicated streets or alleys in official maps constitutes acceptance of the dedication, particularly when followed by other acts." 26 C.J.S., 109; 16 Am. Jur., 380; *Sullivan v. City of Louisville,* 291 Ky. 60; *Village of Pleasantville v. Siciliano,* 252 N.Y.S. 469.

Plaintiff here was entitled to require the defendants to comply with the provisions of the statute and to redistrict the plaintiff's lot at the intersection of Gray and Third Streets as industrial, as originally zoned. *Marren v. Gamble, supra.* Mandamus will lie to compel the performance of a purely ministerial duty imposed by law. *Nebel v. Nebel,* 241 N.C. 491 (499), 85 S.E. 2d 876; *Person v. Doughton,* 186 N.C. 723, 120 S.E. 481.

Judgment reversed.

JOHNSON, J., took no part in the consideration or decision of this case.

The foregoing opinion was prepared by *Devin, Emergency Justice,* while he was serving in place of *Johnson, J.,* who was absent on account of his physical condition. It is now adopted by the Court and ordered filed.