Civil action to recover land and remove cloud upon title.
Plaintiffs in their complaint substantially allege that they are the owners of a specifically described strip of land nineteen feet wide on the east side of Lake Park Boulevard, as a street eighty feet wide, between Cape Fear Boulevard on the south and Harper Avenue on the north, within the corporate limits of the town of Carolina Beach, North Carolina; that in the year 1913 between the first of June and the first of *Page 780 
September the New Hanover Transit Company, a corporation, from whom plaintiffs derived title by mesne conveyances, owning in fee simple a boundary of land then unincorporated, but on which the town of Carolina Beach is now situated, caused a map thereof to be prepared, platting same into lots and streets; that this map was not registered until 13 April, 1928, when it was recorded in Map Book 2, page 133, in the office of the register of deeds of New Hanover County; that one of the streets laid down on said map, Lake Park Boulevard, was shown to be of the width of ninety-nine feet, including the strip of land in question, but that same was never actually located upon the ground; that New Hanover Transit Company sold a few lots with reference to said map, but that no one of the lots so sold fronted on said boulevard, but in the main were east of it.
Plaintiffs further allege that prior to January, 1916, the New Hanover Transit Company caused said map to be revised by cutting off nineteen feet of Lake Park Boulevard as originally platted, thereby reducing it to eighty feet in width; that the map so revised was registered on 12 July, 1916, in Map Book 2, page 1, in the office of said register of deeds, and that later a copy of same was registered in said Map Book 2, page 106; that thereafter all lot owners, who had acquired lots from the New Hanover Transit Company according to the previous plan, and the public generally, accepted and treated the map so revised as the correct plan of Carolina Beach; that those purchasers of lots previously acquired acquiesced in said revised plan and claimed their lots according to it; that numerous lots were sold with reference to the map recorded on Map Book 2, page 1, to various purchasers, who relied upon same as correctly representing the location of lots, streets and avenues platted thereon.
Plaintiffs further allege that on 4 May, 1935, "New Hanover Transit Company, pursuant to the provision of section 3846 (rr) of the Consolidated Statutes of North Carolina, caused to be recorded in the office of the register of deeds of New Hanover County . . . a notice of a declaration that Lake Park Boulevard as it appeared upon the map or drawing first above mentioned as a 99-foot street or highway had not been accepted or used for a period of twenty years, and that the tract of land hereinbefore described as now belonging to the plaintiffs was withdrawn as a boulevard or highway of 99 feet in width and that the dedication thereof had never been accepted."
Plaintiffs further allege that the town of Carolina Beach was created and exists under and by virtue of an act of the Legislature, chapter 117, Private Laws 1925, as amended by chapter 195, Private Laws 1927, and chapter 188, Private Laws 1933. *Page 781 
Plaintiffs further allege that on 21 May, 1935, the board of aldermen of the town of Carolina Beach passed a resolution declaring Lake Park Boulevard to be eighty feet in width; and that the eastern nineteen feet strip of the ninety-nine feet originally platted as a part of said boulevard is not in fact a part thereof; but that on 5 July, 1935, the board of aldermen adopted another resolution, fully set forth in the complaint, in which, after reciting that the resolution of 21 May, 1935, was adopted under a misapprehension of facts, rescinded the same, and declared "that said Lake Park Boulevard be held by the said town as a 99-foot street as originally dedicated as shown on map as recorded in Map Book 2, page 133," and that the strip of land nineteen feet in width, specifically described, eliminated in former resolution, "be and the same is hereby declared to be a part of the said Lake Park Boulevard."
Plaintiffs further allege that defendant town of Carolina Beach is now claiming that the strip of land in question by virtue of the map dated June-September, 1913, and the law of North Carolina, was and is dedicated and belongs to defendant as a part of its street, or is held by the plaintiffs subject to an easement and vested right which the defendant claims to have to use said strip as a part of Lake Park Boulevard, and that said claim and map are a cloud upon their title which they are entitled to have removed to the end that they may be able to sell and use said lot as owners thereof, freed and discharged of any public servitude.
Plaintiffs further allege that upon obtaining deed including the strip of land in question, on 7 February, 1927, they took actual physical possession of the strip in question and erected on the eastern boundary of Lake Park Boulevard as shown on the map recorded in Map Book 2, page 106, as eighty feet wide, a line of posts to prevent the use thereof as a street, and that defendant wrongfully and unlawfully trespassed and removed said posts, and has endeavored to incorporate said strip of land as a boulevard to their damage.
Plaintiffs further allege that by reason of the acts and things alleged in the complaint the defendants and the public generally and all property owners within the corporate limits of the defendant town are estopped to claim that Lake Park Boulevard is ninety-nine feet wide.
Defendant in answer filed denies that plaintiffs are the owners of the strip of land in question, and avers that same was dedicated by the New Hanover Transit Company as a part of the public street designated as Lake Park Boulevard. Defendant denies that the map registered in Map Book 2, page 1, purported copy of which is registered on Map Book 2, page 106, has the effect of reducing the width of Lake Park Boulevard to eighty feet, and further avers that the attempted reduction of said boulevard was not authorized by the board of directors of the New Hanover Transit Company. Defendant further denies that the *Page 782 
registered written instrument which by its terms purports to revoke the dedication therein said to have been made by the New Hanover Transit Company in June-September, 1913, is effective for the purpose indicated, and denies that the town of Carolina Beach has not recognized and exercised dominion and control over the street and each part thereof of the width of ninety-nine feet.
The defendant further avers that the board of aldermen was without authority to pass the resolution of 21 May, 1935, and acted under a misapprehension of existing facts, and that all declarations in said resolution purporting to reduce the width of Lake Park Boulevard from ninety-nine feet to eighty feet are void and of no effect, and were rescinded by the resolution of 5 July, 1935.
Defendant, while admitting its claim to the strip of land in question as a part of Lake Park Boulevard, a public street in the town of Carolina Beach, denies that plaintiff has any right, title, interest or estate in and to the same. Defendant further denies all other material allegations.
Defendant further avers that in two civil actions, one Carolina Beach Corporation and Town of Carolina Beach v. J. R. Bame et al., at the March Term, 1929, and the other Pate Hotel Company, Inc., v. Town of Carolina Beach, October Term, 1934, it was adjudged that the Lake Park Boulevard had been dedicated as a street ninety-nine feet in width, and same are pleaded in bar of this action.
When plaintiffs rested their case, on the trial below, the evidence tended to show substantially these facts: In the year 1913 New Hanover Transit Company, a corporation, owned in fee simple the tract of land, fronting on the Atlantic Ocean, on which the town of Carolina Beach is now located, and including the lot in question. In that year, between 1 June and 1 September, the owner caused to be prepared a map of said area of land, then unincorporated, platting thereon lots and streets on which Lake Park Boulevard, the third street west of and practically parallel to the shore line (Carolina Avenue and First Avenue being the first and second, respectively), was shown to be of the width of ninety-nine feet. The map indicates that from the lake on the south as Lake Park Boulevard extends north, Atlantic Avenue, Fayetteville Avenue, Hamlet Avenue, Cape Fear Boulevard and Harper Avenue in the order named are cross streets. This map is referred to, but was not introduced in evidence for plaintiffs. A. W. Pate, who was president of New Hanover Transit Company, testified that Lake Park Boulevard was laid out, surveyed and staked as ninety-nine feet in width. He further stated: "We didn't pave any of the streets. Just opened the place hard enough to travel on;" that Lake Park Boulevard was opened and used as a street prior to 1916, and "it has been used continuously from that time until now for a street"; and that "the only question is as to the width of the street." *Page 783 
After the map of June-September, 1913, was made and prior to February, 1916, lots were sold and conveyed and contracted to be sold by the New Hanover Transit Company with reference to said map. Of the lots so sold are nine in Block 64 at the corner of Cape Fear Boulevard and Third Avenue, one block west of Lake Park Boulevard, which are now owned and occupied by the defendant, and several other lots west of the Lake Park Boulevard. Likewise, two unnumbered lots (a) the Pate lot and (b) the Loughlin lot were conveyed by deeds dated in 1913 and describing them with reference to, and as being east of the intersection of Lake Park Boulevard and Cape Fear Boulevard at the time when the map showed Lake Park Boulevard to be ninety-nine feet. In February, 1916, two of the stockholders, who owned practically all of the stock in New Hanover Transit Company, and who were president and secretary and treasurer, respectively, of the corporation, without corporate authority, caused the original map of June-September, 1913, to be changed by cutting off nineteen feet of Lake Park Boulevard on the east side extending from the lake on the south to Harper Avenue on the north, thereby reducing it to eighty feet in width, and by taking off portions of lots facing the east side of said boulevard south of Hamlet Avenue, so as to take care of erosion affecting the ocean front lots already sold and, as the said president testified, "to help us in the sale of other lots." The strip taken from Lake Park Boulevard covers the strip in controversy here. The map as changed was registered 12 July, 1916, in Map Book 2, at page 1, in the office of the register of deeds in New Hanover County. Thereafter, a purported copy of it was registered in Map Book 2, at page 106, in the office aforesaid. After the map was changed, numerous lots situated in various parts of the subdivided area were sold in the name of the New Hanover Transit Company with reference thereto. Of all the lots now sold, only a small percentage of them were sold with reference to the original map.
On 2 October, 1919, New Hanover Transit Company conveyed a boundary of land, comprising the strip in question and subject to numerous exceptions, to Carolina Beach Railway Company, which later went into receivership, and the receivers conveyed to Maurice H. Moore "all of the real estate of the Carolina Beach Railway Company located in Federal Point Township, New Hanover County, N.C. . . . the same being located at or near Carolina Beach, . . ." and the title thus acquired passed through Carolina Beach Corporation to plaintiffs.
The evidence further tended to show that on 21 May, 1935, J. L. Becton and Lucy W. Hall, who had acquired and were the owners of lots abutting on Lake Park Boulevard, desiring to erect dwelling houses thereupon and desiring to know whether said boulevard was, under the circumstances, a street eighty feet wide or ninety-nine feet wide, caused *Page 784 
the question to be submitted to the board of aldermen of the town of Carolina Beach, chartered as alleged, and that on said date said board passed a resolution, therein set forth, in which, after reciting inter alia
that "Whereas, said Lake Park Boulevard was never actually laid out upon the ground as a 99-foot street, but was laid out as an 80-foot street and the eastern 19 feet of said strip of land has never been used for the purpose for which it was, or may have been made, and the said 19-foot strip of land on said eastern side of said Lake Park Boulevard has never been used for the purpose for which it was dedicated. And, whereas, said New Hanover Transit Company has filed in the office of the register of deeds of New Hanover County a revocation of the attempted dedication of said 19-foot strip of land therein and hereinafter described," it was resolved that Lake Park Boulevard be and is declared to be an eighty foot street or boulevard and that the strip of land specifically described as the nineteen-foot strip east of the boulevard reduced to eighty feet in width except where it crosses other streets is declared not to be any part of Lake Park Boulevard; that immediately after the passage of said resolution, J. L. Becton and Lucy W. Hall began the construction of their dwelling houses upon their respective lots on the basis of said boulevard being eighty feet wide; and that "a little while later" the board "revoked that resolution."
The evidence further tended to show that in 1937 the board of aldermen of town of Carolina Beach, in connection with a resolution by which Lake Drive surrounding Carolina Lake as shown on maps of Carolina Beach, was abandoned, a map of Carolina Beach was attached on which, by the rule, Lake Park Boulevard measured eighty feet, though not so specified.
The evidence further tended to show that in the minutes of a meeting of the board of aldermen held 5 April, 1932, there appears a resolution in which the board, formally requesting the chairman of State Highway Commission to change the location of Route 40 through the town of Carolina Beach, "extension of Lake Park Boulevard," said that "the above improvement . . . will give you an open roadway of eighty (80) feet instead of the present thirty (30) feet."
There is evidence, elicited on cross-examination of witnesses for plaintiffs, tending to show that in the judgments in the two suits pleaded in the further answer of defendant in bar of this action, it was adjudged that Lake Park Boulevard is ninety-nine feet wide.
It appears that defendant through counsel admitted in open court that "after the plaintiffs got their deed plaintiffs took possession of the 19 feet in controversy and erected a line of stakes on the eastern edge thereof and thereafter the town tore down the stakes and took possession of said 19 feet as a part of the public highway." There is also *Page 785 
evidence tending to show that prior previous owners in the chain of title, beginning with New Hanover Transit Company, had continuous possession of the unsold portion of the land covered by their respective deeds.
At the close of evidence for plaintiffs the court sustained motion of defendant for judgment as in case of nonsuit, and from written judgment in accordance therewith, plaintiffs appeal to the Supreme Court and assign error.
Appellants except to the judgment below upon two grounds: (1) That the court erred in holding as a matter of law that the evidence taken in the light most favorable to plaintiffs is insufficient to make out a case to be submitted to the jury; (2) that the court erred in signing the judgment without finding the facts.
It is our opinion, and we hold, that the exceptions are untenable.
1. At the outset it is noted that the evidence discloses that defendant owns and occupies lots sold with reference to the original map prior to the change of map in 1916.
It is a settled principle that if the owner of land, located within or without a city or town, has it subdivided and platted into lots and streets, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets, and all of them, to the use of the purchasers, and those claiming under them, and of the public. S. v. Fisher, 117 N.C. 733, 23 S.E. 158; Moose v.Carson, 104 N.C. 431, 10 S.E. 689; Conrad v. Land Co., 126 N.C. 776,36 S.E. 282; Collins v. Land Co., 128 N.C. 563, 39 S.E. 21; Davis v.Morris, 132 N.C. 435, 43 S.E. 950; Hughes v. Clark, 134 N.C. 457,47 S.E. 462; Bailliere v. Shingle Co., 150 N.C. 627, 64 S.E. 754; Green v.Miller, 161 N.C. 24, 76 S.E. 505; Sexton v. Elizabeth City, 169 N.C. 385,86 S.E. 344; Wheeler v. Construction Co., 170 N.C. 427,87 S.E. 221; Elizabeth City v. Commander, 176 N.C. 26, 96 S.E. 736; Wittsonv. Dowling, 179 N.C. 542, 103 S.E. 18; Stephens Co. v. Homes Co.,181 N.C. 335, 107 S.E. 233; Irwin v. Charlotte, 193 N.C. 109,136 S.E. 368; Michaux v. Rocky Mount, 193 N.C. 550, 137 S.E. 585;Gault v. Lake Waccamaw, 200 N.C. 593, 158 S.E. 104; Somersette v. Stanaland,202 N.C. 685, 163 S.E. 804.
In Hughes v. Clark, supra, the Court, referring to the cases of Moose v.Carson, supra; Conrad v. Land Co., supra; Collins v. Land Co., supra; andRives v. Dudley, 56 N.C. 126, said: "The effect of the foregoing decisions is that where lots are sold and conveyed by reference *Page 786 
to a map or plat which represents a division of a tract of land into subdivisions of streets and lots, such streets become dedicated to the public use, and the purchaser of a lot or lots acquires the right to have all and each of the streets kept open; and it makes no difference whether the streets be in fact opened or accepted by the governing boards of town or city, if they be within municipal corporations. There is a dedication, and if they are not actually opened at the time of the sale they must be kept at all times free to be opened as occasion may require . . ." Wheelerv. Construction Co., supra.
In Sexton v. Elizabeth City, supra, it is said: "It is held that the original grantor, who sold by the map or diagram of the lands as laid out in blocks and lots, streets and avenues, and those claiming under him, are estopped to deny the right of prior purchasers of lots to an easement in the streets represented on the map."
As stated in Green v. Miller, supra, "The reason for the rule is that the grantor, by making such a conveyance of his property, induces the purchasers to believe that the streets and alleys, squares, courts, and parks will be kept open for their use and benefit, and having acted upon the faith of his implied representations, based upon his conduct in platting the land and selling accordingly, he is equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easement thus created."
In Collins v. Land Co., supra, it was held "that a map or plat, referred to in a deed, becomes a part of the deed as if it were written therein, and that, therefore, the plan indicated on the plat is to be regarded as a unity, and the purchaser of a lot acquires a right to have all and each of the ways and streets on the plat, or map, kept open." To support this view, the Court quotes with approval the following from Elliott on Roads, sec. 120: "It is not only those who buy lands or lots abutting on a road or street laid out on a map or plat that have a right to insist upon the opening of a road or street, but where streets and roads are marked on a plat and lots are bought and sold with reference to the map or plat, all who buy with reference to the general plan or scheme disclosed by the plat or map acquire a right to all the public ways designated thereon and may enforce the dedication. The plan or scheme indicated on the map or plat is regarded as a unity, and it is presumed, as well it may be, that all the public ways add value to all lots embraced in the general plan or scheme. Certainly, as every one knows, lots with convenient cross streets are of more value than those without, and it is fair to presume that the original owner would not have donated land for public ways unless it gave value to the lots. So, too, it is just to presume that the purchasers paid the added value, and the donor ought not, therefore, to be permitted to take it from them by revoking part of his dedication." *Page 787 
Under these principles, the New Hanover Transit Company, having made a map of its land, platting it into lots and streets, showing Lake Park Boulevard as a street ninety-nine feet wide, and having sold lots with reference to such map, thereby irrevocably dedicated the streets, including Lake Park Boulevard, to the use of the purchasers of lots so sold, and those claiming under them, and is estopped to deny the right of such purchasers, and those claiming under them, to an easement in all the streets represented and as represented on the map at the time of the purchase and conveyance with reference to it — irrespective of whether the town, when it was incorporated, accepted and opened the streets to their full width. The right of prior purchasers, and those claiming under them, to this easement was unaffected by the change of the map in 1916, even if it be conceded that the change was made pursuant to corporate action. There is no evidence that any of those who purchased lots with reference to the original map and prior to the change in 1916 have released rights acquired as appurtenant to the purchase. Hence, defendant, standing in privity to a purchaser of lots so conveyed, could compel New Hanover Transit Company, and those claiming under it, to abide by its dedication of the street. Somersette v. Stanaland, supra.
The evidence fails to show nonuser or abandonment of Lake Park Boulevard as a street. The evidence is to the contrary. Hence, the statute, Public Laws 1921, ch. 174, referred to in the complaint as C. S., 3846 (rr), regulating the dedication of streets for public use and limiting the time within which such dedication shall be accepted by the public, is here inapplicable. The statute provides that when the "strip, piece or parcel of land . . . dedicated to public use as a . . . street . . . by any deed, grant, map, plat or other means, shall not have been actually opened and used by the public within twenty years from and after the dedication thereof, shall be thereby conclusively presumed to have been abandoned by the public for the purpose for which same shall have been dedicated." But here all the evidence shows that Lake Park Boulevard as originally platted on the map of June-September, 1913, was actually surveyed, staked and opened to use and has been used as a street continuously, certainly from the first of the year 1916 to the present time. While this use did not extend to the full width of the street, the unused portion has not by reason of it lost the character of street, for which it was originally dedicated. 44 C. J., 907. Hence, the registration of the written instrument of 4 May, 1935, attempting to withdraw Lake Park Boulevard as a street ninety-nine feet in width is without force and effect.
Further, plaintiffs call attention to the fact that when the charter was granted to town of Carolina Beach, Private Laws 1925, ch. 117, and when amended, Private Laws 1927, ch. 195, the only registered map *Page 788 
showed Lake Park Boulevard to be eighty feet wide. They contend that in view of the fact that the map of June-September, 1913, was not registered until April, 1928, the Legislature, by these acts, recognized that the streets should be as shown on the registered map of 1916. However, perusal of those acts, as well as of chapter 188, Private Laws of 1933, leads to the conclusion that the Legislature undertook to do no more than fix the corporate limits of the town. To have deprived those who purchased lots with reference to the original map, and those claiming under them, of appurtenant rights in and to the streets, for the purpose of vesting such rights in another merely for private use would run counter to provisions of the Constitution of North Carolina, Art. I, sec. 17, and to the 14th Amendment to the Constitution of the United States. See Moose v. Carson,supra. Compare Sheets v. Walsh, 217 N.C. 32.
Moreover, it may be granted that so far as the general public is concerned, acceptance is requisite to dedication. Wittson v. Dowling,supra; Irwin v. Charlotte, supra; Gault v. Lake Waccamaw, supra; Somersettev. Stanaland, supra. That the charter did not have the effect in law of an acceptance of Lake Park Boulevard as ninety-nine feet or eighty feet wide may also be conceded. Hughes v. Clark, supra. However, the board of aldermen, acting under the charter and pertinent laws, has the discretionary power as to the extent to which the street as dedicated to public use will be accepted, and may thereby limit the responsibility of the town for maintenance. But it has no right to relinquish or give away the unaccepted portion of the dedicated street. In the event of acceptance of portion of street, as dedicated by plat of owner and sale of lots with reference thereto, the unaccepted portion would remain exactly as it was before it became a part of the town, dedicated to public use, though not kept in repair by the town, and is not to be obstructed because it must at all times be free to be opened as occasion may require. Hughes v. Clark,supra; Wheeler v. Construction Co., supra.
Therefore, if it be conceded that at the time Lake Park Boulevard as originally laid out had not been accepted by the public, the resolution of the board of aldermen, 5 July, 1935, rescinding the resolution of 21 May, 1935, and declaring the boulevard to be ninety-nine feet in width as originally dedicated as shown on map as recorded in Map Book 2, page 133, constituted an acceptance of it for the public.
After careful consideration, we fail to find sufficient evidence in support of plaintiffs' allegations to take the case to the jury on the issues raised.
2. The statute, C. S., 556, provides in part that "an issue of fact must be tried by a jury unless a trial by jury is waived or a reference *Page 789 
ordered." It is further provided in C. S., 569, that "upon trial of an issue of fact by the court, its decision shall be given in writing, and shall contain a statement of the facts found, and the conclusions of law separately." While in the present case the court made no specific findings of fact, the effect of the written judgment is that when taken in the light most favorable to plaintiffs, all the evidence is insufficient to support a favorable finding for plaintiffs on any issue raised by the pleadings. We think this is sufficient compliance with the statute.
The judgment below is
Affirmed.