THE TOWN OF FARMVILLE, A MUNICIPAL CORPORATION V. A. C. MONK & COMPANY, INC., ELBERT C. HOLMES AND WIFE, SUE T. HOLMES; JOHN D. HOLMES AND WIFE, LEYMON B. HOLMES; CARROLL R. HOLMES AND WIFE, HANNAH F. HOLMES; JOHN HILL PAYLOR AND WIFE, ALICE F. PAYLOR; W. D. MORTON AND WIFE, JANE C. MORTON; SARAH CAMERON BLOUNT AND HUSBAND, SHAW BLOUNT; ZYPHIA CAMERON MOSELEY AND HUSBAND, RALPH MOSELEY, AND PATRICK CAMERON.

(Filed 29 April, 1959.)

**1. Declaratory Judgment Act § 1—**

Whether certain property had been dedicated to the public as a street may be determined in an action between the interested parties under the Declaratory Judgment Act.

**2. Dedication § 1—**

A conveyance of land describing its southern boundary as the center of a named street extended, without any reference to a plat or map, there being no street in existence at the southern boundary at the time of the conveyance, is insufficient to show a dedication of any part of the land as a street, the reference to the street extended being merely word of description to make definite the location of the property line.

**3. Same—**

If, at the time of the conveyance of land by registered deed calling for the center line of a named street extended as its southern boundary, there is no street existing along the southern boundary and no plat of the subdivision has been registered and no lots sold therein, persons thereafter purchasing lots in the subdivision may not maintain that the southern portion of the land lying south of the extension of the northern line of the street had been dedicated for street purposes, since neither the grantee in the deed nor any of its predecessors in title are in privity with the later purchasers of lots or could have induced them to buy in reliance upon the belief that the existing street would be extended.

**4. Adverse Possession § 14—**

Neither the public nor a municipality can acquire the right to use a strip of land as a public way unless there has been twenty years user under claim of right adverse to the owner, and evidence that purchasers of lots to the west of a dead-end street began to use a strip of land equal to the southern half of the dead-end street were the street extended, without any evidence of any further use along any definite or specific line, is insufficient to show adverse use of the northern half of the street extended.

**5. Dedication § 3—**

Where the owner of a subdivision outside the boundaries of a municipality, prior to the sale of any lots therein, conveys the fee to a northern portion thereof without any reference to a map showing streets, it withdraws such land from any contemplated dedication of a street or portion of a street along the southern boundary of the land conveyed, and neither the later recording of a map showing a street along the southern portion of the land conveyed, nor the later extension of the boundaries of the municipality to include the *locus in quo*, can have the effect of reviving any previous offer of dedication.

**6. Dedication § 2—**

A municipality is without power to accept an offer of dedication of a street which lies outside its territorial limits.

MOORE, J., not sitting.

APPEAL by defendants other than A. C. Monk & Company, Inc., from *Moore (Clifton L.)*, October Term 1958 of PITT.

This is an action instituted by the plaintiff, a municipal corporation, pursuant to the provisions of Chapter I, Article 26, Section 253, et seq., of the General Statutes of North Carolina, known as the Declaratory Judgment Act, to obtain a declaration by the court of the right, status and legal relationship as between the parties to the action with respect to whether or not a certain strip of land described in paragraph 5 herein has been dedicated to public use.

The facts essential to a disposition of this appeal are as follows:

1. In the year 1920, a corporation known as the Farmville Insurance and Realty Company, hereinafter called Realty Company, purchased a tract of land situate near the Town of Farmville and known as Block "Z" in the division of lands among the heirs of S. N. Albritton and A. G. Dupree, and known as a part of the J. W. May lands, according to a map by W. C. Dresbach & Son dated April 1913 and recorded in Map Book 1, page 16, in the office of the Register of Deeds of Pitt County. (Hereinafter, when we refer to a map or deed as being duly recorded, it will mean duly recorded in the office of the Register of Deeds of Pitt County.)

2. The Realty Company subdivided most of Block "Z" and named the subdivision Washington Heights. A plat was made of said subdivision dated 4 February 1920, which plat was not filed for record until the year 1927, when it was duly recorded in Map Book 2, page 179.

3. The Realty Company conveyed all the lots in Washington Heights to the Farmville Land Company, hereinafter called Land Company, by deed dated 4 December 1923, and duly recorded in Book S-14, page 433, on 11 December 1923.

4. By deed dated 26 May 1920, and duly recorded in Book S-13, page 138, one Henry Clark Bridgers, conveyed seven acres of land to the Farmville Tobacco Development Company, hereinafter called Development Company. This tract of land adjoined the entire northern frontage of the Washington Heights subdivision.

5. The Realty Company sold a portion of Block "Z" to the Development Company by deed dated 30 July 1920, and duly recorded in Book S-13, page 254, and described as follows:

"BEGINNING at a point located in the center of Pine Street extended where the same intersects the West side of East Carolina Railroad right of way and runs with said East Carolina Railroad right of way, N 10-30 E about 60 feet to a stake, corner of the Farmville Tobacco Development Company; thence with the line of said Farmville Tobacco Development Company, N 47-15 W 718½ feet to a stake; thence S 11 W 60 feet, more or less, to the center of Pine Street extended; thence, with the center of Pine Street extended, about S 47-15 E 718½ feet, more or less, to the point of beginning."

At the time of this conveyance no other lots had been conveyed by the Realty Company from Block "Z" or from the subdivision known as Washington Heights.

6. The lands referred to in paragraphs 4 and 5 above were conveyed by the Development Company to the Imperial Tobacco Company by deed dated 14 May 1929 and duly recorded in Book X-17, page 49, on 14 May 1929.

7. In the year 1931, the General Assembly of North Carolina enacted Chapter 16 of the Private Laws of North Carolina, amending the charter of the Town of Farmville, extending the corporate limits of said town to include all the lands hereinabove referred to or described.

8. The lands referred to as seven acres in paragraph 4 above and the lands described in paragraph 5 above, were conveyed by the Imperial Tobacco Company to the Southern States Tobacco Company, hereinafter called Tobacco Company, by deed dated 5 October 1948 and duly recorded 29 October 1948 in Book F-25, page 561, and described as follows:

"BEGINNING at a point formed by the intersection of the Southwest property line of Church Street with the Western property line of the Western right of way of East Carolina Railway, said stake being 50 feet West of the center of the main line of said right of way; thence along the Southwest property line of Church Street, N 45 W 711 feet to an iron stake in the line of

the lands of Mrs. T. C. Hooker; thence along the Hooker line, S 12-15 W 570.2 feet to an iron stake in the center of Pine Street extended; thence S 45-49 E 714.9 feet to an iron stake at the intersection of the center line of Pine Street extended with the Western line of the right of way of East Carolina Railroad; thence along the Western line of East Carolina Railroad, N 11-20 E 563.4 feet to an iron stake, the point of beginning, containing 7.84 acres, as shown on plat recorded in Map Book 4, page 11, made by W. C. Dresbach & Son in July, 1948."

9. The lands described in paragraph 8 above were conveyed by the Tobacco Company to A. C. Monk & Company, Inc. by deed dated 30 March 1956. Copy of this deed was introduced in evidence by the defendant A. C. Monk & Company, Inc. as its exhibit "A." This exhibit shows that it was ordered registered but does not show the book and page; its registration, however, was stipulated.

10. Washington Heights lies south of what is known as Pine Street extended; the property claimed by A. C. Monk & Company, Inc., and hereinabove described, lies to the north of what is known as Pine Street extended; Pine Street extended lies to the west of East Carolina Railroad right of way in the Town of Farmville and is an unimproved dirt street.

11. The defendants, other than A. C. Monk & Company, Inc., are the owners of lots in Washington Heights which abut on the south of what is referred to as Pine Street extended.

12. The defendants' evidence tends to show that when Washington Heights subdivision was laid out in February 1920 it was an undeveloped area without any streets or buildings thereon, but after homes were built in the subdivision, the southern half of Pine Street extended, as shown on the original plat of Washington Heights, was used by the residents of the subdivision as a way of *ingress* and *egress* to and from their residences. The evidence further tends to show that the Town of Farmville did some maintenance work on the particular part of Pine Street extended used by the residents of Washington Heights before and after the corporate limits of the town were extended to include the area.

13. Pine Street east of East Carolina Railroad is a paved street 30 feet wide, and the Town of Farmville has duly authorized that Pine Street west of the railroad be paved for a similar width.

The following issues were submitted to the jury and answered as indicated:

"1. Was the land of Farmville Insurance and Realty Company

Inc., at the time of the survey of same on February 4, 1920, for a subdivision to be known as Washington Heights, an undeveloped area without any streets or buildings thereon? Answer: Yes.

"2. Was the conveyance of land from the Washington Heights area by Farmville Insurance and Realty Company, Inc., to Farmville Tobacco Development Company, Inc., by deed dated July 30, 1920, and recorded October 6, 1920, in Book S-13, page 254, Registry of Pitt County, made before the sale of any lots therein with respect to the map of said subdivision? Answer: Yes.

"3. Were the officers, stockholders, purposes and aims of Farmville Insurance and Realty Company, Inc. and the Farmville Tobacco Development Company, Inc. sufficiently identical to justify the court in regarding them as one and the same corporation? Answer: No.

"4. Was Pine Street in Washington Heights first used as a street by the occupants of the buildings which were constructed after Washington Heights was surveyed and subdivided? Answer: Yes.

"5. Was a map of Washington Heights subdivision first legally recorded on January 25, 1927, in Map Book 2, page 179, Registry of Pitt County? Answer: Yes.

"6. Did the Farmville Insurance and Realty Company, Inc. make its first conveyance of lots south of Pine Street in Washington Heights to Farmville Land Company, Inc., by deed dated December 4, 1923, in Book S-13, page 433, Registry of Pitt County? Answer: Yes.

"7. Were the city limits of Farmville extended by law to include Washington Heights in 1931? Answer: Yes.

"8. Has the City of Farmville maintained Pine Street in Washington Heights from 1931 to the present time throughout that area south of the center line of Pine Street extended? Answer: Yes.

"9. Did the City of Farmville maintain and use as a public street an area of a definite width north of the center line of Pine Street extended throughout the subdivision known as Washington Heights continuously and adversely for twenty (20) years prior to the institution of this action? Answer: No."

On each of the above issues, except Nos. 3 and 9, the court instructed the jury as follows: "The court instructs you that if you believe the evidence in the case and find the facts to be as all the evidence tends to show, it will be your duty to answer the (first, second,

---

etc.) issue YES." In similar language the jury was instructed on the third and ninth issues to answer them NO.

The court entered judgment which adjudged and decreed,

> "1. That the City of Farmville, N. C., owns a right of way and easement for street purposes over and through Washington Heights subdivision of a width of 24 feet, and the northern line of said right of way is the center line of Pine Street (as it exists east of the East Carolina Railroad) extended.
>
> "2. That the City of Farmville, N. C., owns no right of way and easement for street purposes immediately north of the center line of Pine Street extended within said subdivision.
>
> "3. That the defendants (other than A. C. Monk & Company, Inc.) own no rights in and to that area lying immediately north of Pine Street extended in Washington Height's subdivision.
>
> "4. That the plaintiff pay the costs to be taxed by the Clerk."

The defendants, other than A. C. Monk & Company, Inc., appeal, assigning error.

*Lewis & Rouse for plaintiff, appellee.*
*Thorp, Spruill, Thorp & Trotter for defendant, appellee.*
*Jones, Reed & Griffin for defendants, appellants.*

DENNY, J.   As we interpret the record on this appeal, the action was instituted pursuant to the provisions of our Declaratory Judgment Act for the sole purpose of having the court determine whether or not any portion of the property owned by A. C. Monk & Company, Inc. has been dedicated as a public street by it or by any of its predecessors in title. *Morganton v. Hutton & Bourbonnais Co.,* 247 N.C. 666, 101 S.E. 2d 679; *Hine v. Blumenthal,* 239 N.C. 537, 80 S.E. 2d 458; *Carver v. Leatherwood,* 230 N.C. 96, 52 S.E. 2d 1.

On 30 July 1920, when the Realty Company sold the 60-foot strip of land described in paragraph 5 of the statement of facts herein, lying to the north of the center of Pine Street extended, there was no Pine Street west of East Carolina Railroad. Furthermore, the plat of the subdivision of Washington Heights, dated 4 February 1920, was not referred to in the deed and no lot in that subdivision had been sold at that time. Moreover, the plat of the subdivision of Washington Heights was not recorded until 1927.

It is clear from the evidence in this case that no deed conveying the above described land ever referred to the map of the subdivision of Washington Heights. It is true the deed from the Realty Company

to the Development Company and the respective deeds to the other predecessors in title of A. C. Monk & Company, Inc., as well as the deed to A. C. Monk & Company, Inc., did refer to the center of Pine Street extended, but, as we interpret the evidence, since Pine Street had not been opened west of East Carolina Railroad when the deed from the Realty Company to the Development Company was executed, the words "Pine Street extended" were mere words of description to make definite the location of a property line. Pine Street as it then existed came to a dead end east of East Carolina Railroad, which was immediately east of Washington Heights.

Moreover, it was stipulated in the court below that the first lot sold in the subdivision of Washington Heights was to John Henry Dunn by deed dated 12 December 1923 and duly recorded 26 May 1924. Therefore, there is nothing in the documentary evidence or the oral evidence introduced in the trial below that tends to show that A. C. Monk & Company, Inc., or any of its predecessors in title, beginning with the Development Company in 1920, were in privity with or induced the defendant appellants or any of their predecessors in title to purchase property in Washington Heights under the belief that the property would be developed as shown on the unrecorded map of said subdivision.

We find nothing in the chain of title of A. C. Monk & Company, Inc. that tends to show a dedication of any portion of Pine Street, unless such street was shown on that certain plat made by W. C. Dresbach & Son in July 1948 and duly recorded in Map Book 4, page 11, and referred to in the deed from Imperial Tobacco Company to Southern States Tobacco Company as set forth in paragraph 8 of the statement of facts herein. However, it does not appear that a copy of the map made by Dresbach & Son was introduced in evidence in the court below, and no such map was forwarded as an exhibit to this Court.

The Town of Farmville does not contend that it has acquired an easement in the 24-foot strip of land in controversy by prescription. Furthermore, it concedes that the evidence adduced in the trial below establishes the fact that the general public has not used the disputed area under any claim of right adverse to the owner, nor has travel thereon been confined to a definite and specific line: *Hemphill v. Board of Aldermen*, 212 N.C. 185, 193 S.E. 153. If there has been a dedication of the 24-foot strip of land included in the deed from the Realty Company to the Development Company, dated 30 July 1920, and to the defendant A. C. Monk & Company, Inc. by *mesne con-*

*veyances,* such dedication must be established as a matter of law from the documentary evidence introduced in the trial below.

In *Hemphill v. Board of Aldermen, supra,* this Court said: "Before a highway can be established by prescription it must appear that the general public used the same under a claim or right adverse to the owner and the travel must be confined to a definite and specific line, although slight deviations in the line of travel, leaving the road substantially the same, may not destroy the rights of the public. 18 C.J., page 107; Elliott on Roads and Streets, section 194; *S. v. Haynie,* 169 N.C. 277; *Milliken v. Denny,* 141 N.C. 227; *Bailliere v. Shingle Co.,* 150 N.C. 633; *Snowden v. Bell,* 159 N.C. 500; 9 R.C.L., page 776.

"To establish the existence of a road or alley as a public way, in the absence of the laying out by public authority or actual dedication, it is essential not only that there must be twenty years user under claim of right adverse to the owner, but the road must have been worked and kept in order by public authority. * * * "

In the case of *Insurance Co. v. Carolina Beach,* 216 N.C. 778, 7 S.E. 2d 13, it is said: "It is a settled principle that if the owner of land, located within or without a city or town, has it subdivided and platted into lots and streets, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets, and all of them to the use of the purchasers, and those claiming under them, and of the public." (Authorities cited.)

Even if it were the intention of the owner of Washington Heights subdivision to dedicate Pine Street for a width of 48 feet as shown on the map thereof, when it sold the northern half of the purported street without any reference to the map it constituted a withdrawal of any contemplated dedication it might have had as to the conveyed portion thereof. *Rowe v. Durham,* 235 N.C. 158, 69 S.E. 2d 171. Moreover, since the corporate limits of the Town of Farmville were not extended to include the area now in dispute until approximately eleven years after the owner of the subdivision had conveyed the disputed area without any reference to the map of the subdivision, neither the recording thereafter of the map of said subdivision, nor the extension of the town limits to include the area, can have the effect of reviving any previous offer of dedication, if one had been made. *Rowe v. Durham, supra.*

"A municipality is without power to accept an offer of dedication of a street which lies without its territorial limits." *Rowe v. Durham, supra; Gault v. Lake Waccamaw,* 200 N.C. 593, 158 S.E. 104. The evidence discloses no offer of dedication since 1931, the year the

corporate limits of the Town of Farmville were extended to include the disputed area.

We have carefully examined the appellants' 36 assignments of error and, in our opinion, they present no error that is sufficiently prejudicial to justify a new trial. A *seriatim* discussion of these numerous assignments would serve no useful purpose.

No Error.

MOORE, J., not sitting.