ALPHA WARD v. SUNSET BEACH AND TWIN LAKES, INC.

No. 8013DC757

(Filed 7 July 1981)

1. **Dedication § 4; Easements § 11— erosion of land—no abandonment of easement in dedicated street**

There was no abandonment of an easement in a dedicated street when the land on which the street was located was eroded and submerged by waters of an inlet. Even if there was a legal abandonment of the dedicated street, abutting property owners retained as easement over the abandoned street to the extent necessary to allow reasonable ingress and egress.

2. **Easements § 8.4; Waters and Watercourses § 6.2— reclamation of submerged lands—ownership of lots—right to easement in former street**

Where land in a beach development, including two lots owned by plaintiff and an abutting street which had been dedicated to public use by recorded plat, was eroded and submerged by the waters of an inlet, and such land was subsequently reclaimed by defendant by the deposit of dredged sand and other fill material thereon, plaintiff once again became the fee simple owner of the two lots and was entitled to her easement in the abutting street as it existed at the time plaintiff first purchased her two lots for the purpose of access to her lots.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 19 March 1980 in District Court, BRUNSWICK County. Heard in the Court of Appeals 3 March 1981.

Plaintiff brought this action seeking a judgment declaring her to be the owner of two lots in the Sunset Beach Development in accordance with a recorded 1955 map. Plaintiff also sought a

declaration that her two lots extend from the Atlantic Ocean to the existing Main Street, or in the alternative, that she has an easement of ingress and egress by the closest route from her two lots to the existing Main Street. Answering the Complaint, the defendant alleged that the portion of Sunset Beach, in which plaintiff's lots were located, was completely washed away during the fall of 1960; that defendant has reclaimed this land and has built a new Main Street which is compatible with the reclaimed property; that since plaintiff has made no claims for her land in twenty years, she is estopped to do so now; and in the alternative, that if the court should find plaintiff was the owner of the two lots and entitled to a right-of-way, the plaintiff should reimburse defendant for its reclamation expenses and pay the defendant the market price for any land designated as a right-of-way.

The uncontested facts are as follows. On 5 December 1955, M. C. Gore and his wife conveyed lots 3 and 4, Block 25, Sunset Beach Development to plaintiff and her husband, now deceased. The defendant herein is the successor in title to the unsold portion of Sunset Beach formerly owned by Gore and his wife. In the recorded 1955 map, wherein lots 3 and 4 are platted, all streets and roadways, including the then existing Main Street, were dedicated to the public use. Further, the findings of fact to which no exceptions were made reveal:

3. That from 1955 through 1967 Tubbs Inlet, which was located generally to the east of Sunset Beach and lay between Sunset Beach and Ocean Isle Beach, began shifting in a westward direction and completely submerged and eroded the entire eastern end of Sunset Beach Development as it then existed and in particular lots 3 and 4 of Block 25 and all other property of said Development to a point near 11th Street as designated on the 1955 Map. That not less than 1400 continuous feet of land was submerged so that there was no land that was above water level at low tide.

4. That in 1968, M. C. Gore obtained a permit to reconstruct the eastern end of the island and thereafter proceeded to close Tubbs Inlet by dredging sand and other fill material from the waterway behind the island and depositing that fill into said inlet. That Tubbs Inlet was completely closed on February 14, 1970.

5. That on or about April 3, 1970 a smaller inlet was opened near the original location of Tubbs Inlet in 1955. This inlet is now known as Tubbs Inlet and it was opened by explosives.

6. That after Tubbs Inlet was closed by M. C. Gore and after opening the new inlet in 1970, the eastern portion of Sunset Beach, including the property in the area of Block 25 was not in the same configuration or shape as it was before the shifting of the inlet began in 1955. That before the inlet began shifting, Sunset Beach was approximately 2500 feet wide in that general area and it is now only approximately 1200 feet wide.

7. That in filling in Tubbs Inlet, M. C. Gore filled in the area that had been deeded to George Ward and wife, Alpha Ward, said lots having become covered by the waters of Tubbs Inlet after 1955. . . .

8. That the 1955 Map shows that lots 3 and 4 of Block 25 are located on a street designated therein as Main Street; that said Main Street ran from the entrance highway of the development (known as the Causeway Road) to and by lots 3 and 4 of Block 25 and abutted said lots.

.   .   .

12. In 1976 the defendant . . . caused the eastern end of Sunset Beach Development to be re-surveyed and re-mapped . . . . That according to that map, from approximately 11th Street eastward to Tubbs Inlet, Main Street was relocated a small distance north of the former Main Street as designated on the 1955 Map.

13. That the lots that were conveyed to George Ward and wife, Alpha Ward . . . are not shown on the defendant's new map (the 1976 Map) but these lots are physically present on the earth and are overlaid by portions of land designated as lots 22, 23, 24 and 25, Block 15R on the 1976 Map. The defendant is the present owner of the portions of lots 22, 23, 24 and 25, Block 15R on the 1976 Map which do not overlap lots 3 and 4 on the 1955 Map. The defendant's property lies between the property of the plaintiff and the road which is identified as Main Street on the 1976 Map.

14. That the plaintiff, Alpha Ward, owns superior title to lots 3 and 4, Block 25 as shown on the 1955 Map and those lots have been located on the ground and their location is not contested by the parties to this action.

Upon these and other facts, the trial court decreed that plaintiff was entitled to possess the lots in question but then ordered that plaintiff was neither "entitled to the enforcement of the previously existing dedicated easement to her lots which is designated as Main Street" on the 1955 Map, "nor is she entitled to an easement by necessity to her lots across the lands of the defendant" from Main Street as it now exists. The trial court also denied "defendant's Counterclaim for damages, reimbursement or other compensation from the plaintiff."

*Ray H. Walton and William F. Fairley, for plaintiff appellant.*

*Grover A. Gore, for defendant appellee.*

BECTON, Judge.

Plaintiff has assigned error to the trial court's order denying "enforcement of the previously existing dedicated easement to her lots." She has also assigned error to the following two findings of fact:

9. That Main Street as shown on the 1955 Map has been abandoned but if it could be relocated it would run between the present line of sand dunes on the south side of the island and the Atlantic Ocean and upon the beach strand. It would also run into the inlet and the Inland Waterway on the north portion of the island.

10. Main Street as shown on the 1955 Map would be impossible to reconstruct or maintain.

[1] Plaintiff asserts that the record fails to show any evidence of abandonment of Main Street as shown on the 1955 Map (Old Main Street), and we agree. Gore testified that Old Main Street was never withdrawn from dedication. Once an easement is established by dedication, it can only be abandoned by an intention to relinquish the interest accompanied by "acts and conduct positive, unequivocal, and inconsistent with [one's] claim of title." *Banks v. Banks,* 77 N.C. 186, 187 (1877). Furthermore, a mere lapse of time

or other delay in asserting one's claim to an easement unaccompanied by such acts and conduct clearly inconsistent with one's rights does not constitute a waiver or abandonment. *Id.; Miller v. Teer,* 220 N.C. 605, 18 S.E. 2d 173 (1942). Simply put, there was no easement, indeed no Main Street, to use during the period of time the eastern portion of Sunset Beach was submerged, and· consequently, no abandonment of the easement.[1]

[2] Defendant argues that the easement was, in effect, abandoned when the land was washed away, and that thereafter, when defendant reclaimed the land, defendant had no duty to reconstruct Old Main Street. We agree that defendant had neither a duty to reclaim the land nor a duty to rebuild Old Main Street. However, once the portion of Sunset Beach, which included plaintiff's lots 3 and 4, was reclaimed; plaintiff once again became fee simple owner of those lots and was entitled to the easement as it existed at the time plaintiff first acquired the two lots. While not directly on point, the principle in *State·v. Johnson,* 278 N.C. 126, 179 S.E. 2d 371 (1971), that accretion and erosion do not change boundaries unless the body of water is a boundary line, is instructive. The court in *Johnson* stated: "[A] 'traveling inlet' does not uproot and supplant a boundary line as it passes over it unless such inlet in fact was the boundary when it started its journey." *Id.* at 148, 179 S.E. 2d at 385. Plaintiff in the case *sub judice* contends that since the effects of natural accretion and erosion did not affect the fee simple title to appellant's property in *Johnson,* then neither should the erosion and subsequent reclamation affect the property interest plaintiff has in the easement. We agree.

We are guided by an 1897 Illinois Supreme Court decision which appears to be directly on point with our holding. *City of*

---

1. Even assuming there has been an abandonment, we adopt the principle that when there has been a legal abandonment of a dedicated street, abutting property owners retain easement over the abandoned street to the extent necessary to allow reasonable ingress and egress. *See Potter v. Citation Coal Corp.,* 445 S.W. 2d 128 (Ky. 1969). This principle is consistent with G.S. 136-96 which provides that when a road or street is not used within fifteen years after dedication *and* when a declaration of withdrawal is recorded, the road is deemed abandoned. An exception in this statute, however, provides that this provision shall not apply "where the continued use of any strip of land dedicated for street or highway purposes shall be necessary to afford convenient ingress or egress to any lot or parcel of land sold and conveyed by the dedicator of such street or highway." *See Andrews v. Country Club Hills,* 18 N.C. App. 6, 195 S.E. 2d 584 (1973).

*Chicago v. Ward,* 169 Ill. 392, 48 N.E. 927 (1897). In *Ward,* the plaintiffs, property owners sought to enjoin the defendant City from erecting buildings on "reclaimed" land adjacent to their property. Plaintiffs claimed this land had been dedicated as a park when the area was platted. The plat, which was amended in 1836 and 1839, described certain land along the lakefront which was left vacant and was not subdivided. The plat was marked: "Open ground. No building. Public ground. Forever to remain vacant of building." In 1844, the City of Chicago, by resolution, declared that the open space should be enclosed as a public park. In 1847, 1851 and 1856 the land was designated as "Lake Park" in successive ordinances. The controlling issue in the case concerned land which was carried away by the waters of Lake Michigan and later reclaimed. The Illinios Supreme Court held:

> [T]he title to these lands submerged by the action of Lake Michigan was not lost, and that by their subsequent reclamation the city has completely reasserted its title thereto, as such title stood at the time of the dedication of the respective plats thereof. The trust impressed on them was that they should forever remain free from buildings, and it cannot be said that while they were submerged they were subject to be built upon. We do not see that the submergence and subsequent reclamation altered or destroyed the trust upon and for which they were held. As the city had, as we have seen, the fee in this park, impressed with the trust declared by the dedicators, the legislation of 1861 and 1863 added nothing to its trust, and can only be looked upon as confirmatory of the same.

*Id.* at 408, 48 N.E. at 932. *See also Mulry v. Norton,* 100 N.Y. 424, 3 N.E. 581 (1885). The Illinois court emphasized that the restriction of the land as a park created a vested right attaching to the abutting property owners by virtue of the original dedication. The court also presumed that the plaintiffs in *Ward* purchased their lots because of the enhanced value of the lots from the dedication.

Just as the City in *Ward* reclaimed title to its land as the title stood at the time of dedication, so too can plaintiff in this case reassert her title as it stood when she purchased the two lots. Plaintiff's vested right in the easement, depicted as Old Main Street, was reclaimed along with lots 3 and 4. Plaintiff's lots 3

and 4, even more so than plaintiffs' property in *Ward*, are enhanced by this easement. Without the easement, plaintiff's land would be accessible only by the ocean.

We feel that the tenor of prior North Carolina decisions is consistent with our holding. For example, in *Insurance Co. v. Carolina Beach*, 216 N.C. 778, 7 S.E. 2d 13 (1940), in which the width of a dedicated street was subsequently reduced from ninety-nine feet to eighty feet,[2] our Supreme Court held:

> [T]he New Hanover Transit Company [predecessor in title to plaintiff corporation], having made a map of its land, platting it into lots and streets, showing Lake Park Boulevard as a street ninety-nine feet wide, and having sold lots with reference to such map, thereby irrevocably dedicated the streets, including Lake Park Boulevard, to the use of the purchasers of lots so sold, and those claiming under them, and is estopped to deny the right of such purchasers, and those claiming under them, to an easement in all the streets represented and as represented on the map at the time of the purchase and conveyance with reference to it — irrespective of whether the town, when it was incorporated, accepted and opened the streets to their full width. The right of prior purchasers, and those claiming under them, to this easement was unaffected by the change of the map in 1916, even if it be conceded that the change was made pursuant to corporate action.

*Id.* at 787, 7 S.E. 2d at 19. As support for its holding in *Insurance Co. v. Carolina Beach*, the Supreme Court cited numerous cases sustaining the following principle:

> [I]f the owner of land, located within or without a city or town, has it subdivided and platted into lots and streets, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets, and all of them, to the use of the purchasers, and those claiming under them, and of the public. . . .

*Id.* at 785, 7 S.E. 2d at 18. The reason for this principle is:

---

2. The reduction in width of this easement was carried out "to take care of erosion affecting the ocean front lots already sold and, as the said president [of the corporation] testified, 'to help us in the sale of other lots.'" 216 N.C. at 783, 7 S.E. 2d at 17.

---

---

[T]hat the grantor, by making such a conveyance of his property, induces the purchasers to believe that the streets and alleys, squares, courts, and parks will be kept open for their use and benefit, and having acted upon the faith of his implied representations, based upon his conduct in platting the land and selling accordingly, he is equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easement thus created.

*Green v. Miller*, 161 N.C. 25, 30, 76 S.E. 505, 507 (1912). This principle and its rationale are equally applicable in the case before us. It seems clear in this case, as in most cases, that plaintiff was induced, in part, to purchase lots 3 and 4 because the lots were accessible by some means other than the ocean. Once defendant reclaimed plaintiff's land, plaintiff once again became fee simple owner with rights to her land, including access by way of the easement, as it existed at the time of purchase. Defendant could not revoke the easement as shown on the 1955 Map by having a new map platted.

We find it unnecessary to deal with plaintiff's assignment of error dealing with the finding of fact and conclusion of law that Old Main Street would be impossible to rebuild. As we earlier noted, since defendant was under no duty to reclaim plaintiff's land, defendant is under no duty to rebuild Old Main Street. Defendant has conceded though that once it reclaimed plaintiff's lots, plaintiff owned this land. We hold, therefore (1) that plaintiff retains an easement for purposes of ingress and egress to her lots in and over the entire area of Main Street, as that street was depicted on the 1955 Map; and (2) that plaintiff is not otherwise entitled to an easement by necessity to her lots across the lands of defendant, to and from Main Street as it now exists.

Affirmed in part; reversed in part.

Judge VAUGHN and Judge WELLS concur.